### 7796

### BROWN v. NORTHWESTERN R. R. CO.

1. PLEADINGS—DEMURRER—SURFACE WATER.—An allegation that a pond caused by an embankment of a railroad company contained both surface and spring water is not demurrable on the ground that the railroad is not liable for injury from damming surface water.

2. WATERS—A RAILROAD COMPANY obstructing a watercourse by an embankment negligently constructed is liable for damages caused thereby.

3. IBID.—SURFACE WATER.—The charge objected to when considered with the whole charge held to have clearly pointed out the distinction between surface water and natural watercourse.

4. IBID.—DITCH.—Instruction as to when a ditch becomes a watercourse held not to be prejudicial to appellant.

5. EVIDENCE—RAILROADS—SECTION MASTER.—*Conversations* between section master and landowner as to condition of roadbed and injury therefrom to lands of plaintiff, held at the place in question, admitted to show knowledge of carrier that it was injuring the lands.

6. APPEAL.—Exception to admission of evidence not objected to and not shown to be prejudicial to appellant not considered.

7. RAILROADS.—PUNITIVE DAMAGES may be awarded against a railroad company for ponding water on lands and keeping it there, after the condition of the pond and its surroundings had been repeatedly brought to its attention.

MR. JUSTICE WOODS *thinks there was no evidence of wantonness.*

Before KLUGH, J., Clarendon, February, 1910, term. Affirmed.

Action by T. Parker Brown against Northwestern Railroad Company of South Carolina. From Circuit judgment, defendant appeals on the following exceptions:

I. "After defining the rights of the parties as to surface water, the presiding Judge charged the jury:

" 'The law is different with reference to watercourses. Where water flows in a natural and accustomed route, any landowner is required to allow that water to so flow. He can't dam it up so as to keep his neighbor whose lands lie below him, from enjoying the benefit of the natural stream of water; neither can he dam it up so as to back it up and throw it back on his neighbor, whose lands are above him, or alongside of him; but he must allow the water in the natural watercourse to have its natural and ordinary accustomed flow. He may divert it temporarily or divert a small portion of it for his own use, but with reference to the flow of water in natural streams; a man can't dam it up and throw it on his neighbor so that it would damage his neighbor, and if he does, he is liable to compensate his neighbor for whatever damage it does.'

"The presiding Judge erred in so charging the jury, the error being as follows:

"He charged the jury that 'one must allow the water in a natural watercourse to have its ordinary and accustomed flow, but with reference to the flow of water in natural streams, he cannot dam it up and throw it on his neighbor so it will damage his neighbor, and if he does, he is liable to compensate his neighbor for whatever damage it does,' having just charged the jury that 'where water flows in a natural and accustomed route, any landowner is required to allow that water to so flow;' by this definition he made the test of a natural watercourse, the water flowing in streams, and there was error in so doing, for the reason that water may flow in a natural and accustomed way, in a natural and accustomed route, and yet be only surface water until it shall have made for itself a bed or channel with banks which are well defined, and in delivering this charge, the presiding Judge practically charged the jury that if water flows in a natural and accustomed way, some

continuous flow of water in a natural and accustomed route, such was a natural watercourse, and could not be obstructed; whereas such definition does not meet the requirement of a natural watercourse; and there was error further. in delivering such charge because it is inconsistent with the charge delivered further on, as contained in the defendant's second request, which was as follows, and which contained a correct proposition of law, viz.:

" 'Surface waters are waters of a casual and vagrant character, which ooze through the soil or diffuse or squander themselves over the surface, following no definite course. They are waters which though customarily and naturally flowing in a known direction and course, have nevertheless no banks or channels in the soil, and include waters which are diffused over the surface of the ground, and are derived from rains and melting snows; occasional outbursts of water, which in time of freshet or melting snows descend from the mountains and inundate the country, and the moisture of wet, spongy, springy or boggy ground.'

II. "There was error on the part of the presiding Judge in refusing to charge the defendant's third request, as made, which was as follows:

" 'To constitute a watercourse there must be a stream flowing usually in a particular direction, though it need not flow continually. It may sometimes be dry, but it must flow in a definite channel, having a bed, sides or banks, and it naturally discharges itself into some other stream or body of water. It must be something more than mere surface drainage over the entire face of a tract of land occasioned by unusual freshets or other extraordinary causes;' as it was a correct proposition of law and it was error in not so charging, and there was error in modifying it, as follows:

" 'I charge you that a watercourse is a course that water naturally flows in, and even if it drys up at times, yet when it flows again, it will flow practically along the same bed or channel, or in the sides or banks—the banks may be higher

2—88

or lower, as the case may be; it may be ever so high or so low as to be almost imperceptible, but yet if they define the limits of the watercourse, and the water flows naturally and ordinarily over the course that is defined by those banks or limits, then that amounts to a natural watercourse, and I so charge you;' the error being in modifying the charge in charging the jury that a watercourse is a course that water naturally flows in and in bed on sides that may be almost imperceptible, yet if they define the limits of the watercourse and water flows naturally and ordinarily over the course that is defined by those banks or limits, then that amounts to a natural watercourse; whereas such statement does not cover the definition of a natural watercourse, as water may naturally flow in a given direction and will flow down hill and within certain limits, and yet never cut a definite channel in the soil, which is necessary to make a watercourse.

III. "The presiding Judge committed error in not charging without modification the defendant's fourth request, which was as follows:

" 'It is essential to the existence of a watercourse that there shall be a well defined bed or channel with banks. If these characteristics are absent, there is no watercourse within the legal meaning of the term; hence natural depressions in the land through which surface water from adjoining lands naturally flows, are not watercourses;' in that it was a correct proposition of law, and should have been so charged, and he committed error in modifying such charge, as follows:

" 'I charge you that, but at the same time, I charge you as I have already done, that there is in the nature of things to be prescribed limits within which the term watercourse must be used. It may be a greater or less width, or greater or less depth, but if it be a course over which water naturally and ordinarily, not mere surface water, but accumulation of waters from springs and other sources other than

from mere surface water, flows or finds its outlet, seeking its level, which all water does, then that is water the obstruction of which will lay the party obstructing it liable in damages if he injures anybody else by that obstruction.'

"By such modification the jury was instructed that 'if it be a course over which water naturally and ordinarily, not merely surface water but an accumulation of water from springs and other sources other than from mere surface water flows or finds its outlet, seeking its level, which all water does, then that is water the obstruction of which will lay the party obstructing it liable in damages if he injures anybody by that obstruction;' in that by such modification and charge, the jury was instructed in effect, that water flowing naturally and ordinarily to find an outlet and seeking its level, would be a natural watercourse; whereas it is submitted that, no matter from what source the water may have been derived or come, it would have the characteristics of surface water only, unless it flowed in seeking such level through a bed or channel with banks or sides, and this charge, as so delivered, excluded such idea, and was in conflict with the second request to charge, hereinbefore recited, and reference to which is here made.

IV. "The presiding Judge erred in not charging without modification the sixth request of the defendant, which is as follows:

" 'A ditch is an artificial channel and it cannot be converted into a natural watercourse by lapse of time.' In that it was a correct proposition of law, and should have been so charged.

"The presiding Judge further erred in modifying the sixth request to charge, as follows:

" 'I charge you that, but with this modification: that if there was originally a watercourse, that is, a course over which the water naturally flowed in order to find its outlet, not mere surface water but accumulation of waters from streams or otherwise, flowing to find its outlet, seeking its

level in the sea, which all water does on the land, and if man substituted for that natural watercourse a ditch as the outlet for that natural flow of water, then if that ditch was made along the course that the water had before been accustomed to flow in its natural course, the ditch being made there to accelerate the flow of the water, or for the benefit of the people who made it and owned the land along it, then that would not deprive—the mere fact that it was a ditch—would not deprive it of its character as a natural watercourse. If you find here that Indian Head was emptied by the flow of water originally and that this ditch was substituted for the original natural course for the flow of that water, and if you find that that was not mere surface water, but formed of accumulations of water so as to make it a natural watercourse, then the ditch that was substituted for the original watercourse has the same characteristics, in the eyes of the law, and the defendant here, and all other people are bound to the same duties with reference to other citizens towards watercourses, that the defendant and all other people are bound with reference to the original natural flow of water from Indian Head. If there was no natural flow of water from Indian Head, and this was a mere ditch, then the language used here and that quoted from the Supreme Court in the case read to you is applicable, for a mere ditch cannot be converted into a watercourse, no matter how long it continues to be used, and I so charge you;' in that by such modification there was brought into the case a question of obstructing a natural watercourse at pond A, when there was no allegation in the complaint that the ditch was a natural watercourse, or that there was a natural watercourse along the bed of the ditch, but the allegations of the complaint were that the ditch was obstructed, and the plaintiff sought by his complaint to establish a prescriptive right to have it kept open, and there were none of the characteristics of a watercourse sought to be alleged in reference to said ditch, and there was error in

bringing such issue into the case, when it was not raised by the pleadings; there being no contention whatever that there was a natural watercourse flowing from Indian Head.

V. "There was error on the part of the presiding Judge in charging the jury that under the agreement alleged to have been made by the plaintiff with the defendant for the cutting of the ditch on the east side of the railroad, the plaintiff could recover damages of the character alleged in the complaint, if the plaintiff fulfilled his part of the agreement, and the defendant refused to carry out its part of the agreement, if such failure resulted in injury to the plaintiff as alleged, the error being that for breach of a contract of this kind the cost of cutting the ditch only could be recovered, and no damage is alleged in the complaint; and there was error on the part of the presiding Judge in not charging the tenth request of the defendant in relation thereto, which was as follows:

" 'If there was an agreement that Mr. Brown, the plaintiff, should cut a ditch on the eastern side of the railroad, and in consideration thereof the railroad was to put in a pipe at the Pond B, referred to in the complaint, if the railroad failed to put in such pipe, you cannot find any damages for the plaintiff for the breach of such agreement, as he did not allege or prove the cost of cutting the ditch;' it being submitted that it was a correct proposition of law, and should have been so charged.

VI. "There was error on the part of the presiding Judge in permitting the plaintiff to offer testimony, by himself and others, to prove the agreement on the part of the defendant with the plaintiff in reference to cutting the ditch on the eastern side of the railorad, and the consideration thereof, by Mr. Cochran and Mr. Sing, the section masters of the defendant company, the objection being to all of said testimony, whether herein specifically reproduced or not, upon the ground that neither of said section masters had any authority whatsoever to bind the defendant by anything

they might say or do in reference to such matter, the same being beyond the scope of their authority, involving a change in the road and putting the burden upon the defendant, which could not be done by the section master.

"The following is in part the testimony so objected to and admitted over the objection of the defendant, viz.:

" 'Did the section master ever say anything to you with reference to the trouble that that track gave him? Yes, sir.

" 'Mr. Purdy: I object. The railroad company is not bound by any statement made by the section master. There is nothing the section master can do to bind the railroad.

" 'Court: I think the testimony is competent, Mr. Purdy.

" 'What did the section master say to you about keeping up those tracks? While he was there, working there, he said it gave him more trouble than any other place on his road. Which one of the section masters? Mr. Chas. Cochran. I will ask you who pointed out to you how the damage could be remedied? Capt. Sing and Mr. Cochran. Who are they? Capt. Sing is the road master, and Mr. Cochran is the section master. And you say they pointed out to you how it could be remedied? Yes, sir. How—

" 'Mr. Purdy: We object. It does not appear that either one of these gentlemen—they were section masters in their time and place, and it does not appear that either one of them had authority to bind the railroad company except in the regular discharge of their duties.

" 'Mr. Davis: I had better get down to the contract and be done with it.

" 'What did you do to remedy that damage? I cut the ditch that they—

" 'Mr. Purdy: We object. He is going on to say what they did or said to him. He asked what he did, and that is as far as he can go; and he can't prove indirectly what he can't prove directly.

" 'What did you do? I cut the ditch. On which side of the railroad? On the eastern side. Where did you cut the

ditch from? I cut it from pond A to pond B, and from B to A was the natural way it was to go. On the eastern side of the track? Yes, sir. With your hands? Yes, sir. You paid for it? Yes, sir.

" 'Mr. Purdy: We object. There is no allegation in the complaint that he expended any money or any cost to him in the cutting of the ditch, and it is not made any part of his allegation, but his damage to the crops and his land.'

" 'Who staked out that ditch for you to cut on the road's right of way?

" 'Mr. Purdy: We object. He will have first to show that the party who staked it out had authority to do it.

" 'Let's find out who did it. Who staked it out for you? Mr. Cochran. And who was Mr. Cochran? Section master.

" 'Mr. Purdy: We object to any conversation with Mr. Cochran with reference to cutting a ditch to relieve the land of Mr. Brown, the plaintiff, because it does not appear that this is in the scope of his authority; on the contrary, the rulings of the Supreme Court are that a section master has no authority except in keeping up the track, and here, now, is a contract sought to be made through Mr. Cochran for the relief of the lands of the plaintiff by doing a separate and independent act at the instance of the section master, not embraced in his duties, and outside of his duties in keeping up the track, viz.: having a ditch cut along the right of way for the accommodation of a private individual to bind the principal; so we object to that contract, or any evidence on that.

" 'Court: If the plaintiff was suing here to get compensation for cutting the ditch, your position might be well taken, but it has already been testified that the section master had found or said—had found that this was the hardest part of his roadbed to keep up, and it seems to me it was within the scope of his authority to do whatever was necessary or whatever contributed to the agreement on the part of the

road, and if he made arrangements so the water could be drained off, then it would be within the scope of his duty to do it, to drain the water off, either by consent or to somebody else having it done.    Proceed.

" 'Answer the question, Mr. Brown.    What were you doing cutting that ditch on that right of way?

" 'Mr. Purdy: I will ask that the stenographer note that it was allowed to be answered over the objection of the defendant.

" 'Court: Yes, sir.

" 'What were you doing cutting the ditch on their right of way?    Mr. Cochran told me—said the water was doing him so much damage there, and said not only damaging to me, but also to the railroad, and if I would cut the ditch there the railroad would raise the roadbed and take the solid embankment up and open out, I suppose, three or four feet.

" 'Mr. Purdy: That is going into something that we are not advised of in the complaint.    The complaint alleges that the consideration of the ditch to be cut was that they should put in a pipe at pond "B;" nothing said about any opening by the railroad by raising the track.

" 'We allege that they did raise the embankment.    State your contract with Mr. Cochran.

" 'Mr. Purdy: Our objection is that they can't put anything in to show anything about the opening of the—

" 'Court: I think he can.    The complaint alleges that in consideration of the plaintiff's digging a ditch along the railroad's right of way, the consideration set out in there, and it is inquired into, and if the consideration of this contract that the ditch be cut, I think it could be shown whether it was for the advantage or disadvantage of either party, and he can go fully into that and show what was the consideration.

" 'Mr. Purdy: Let me ask one question, so as to get in another objection on the record.

" 'Was that agreement in writing, or by word of mouth? In both.   With Mr. Cochran?   No, sir; by word of mouth with Mr. Cochran.   You say no written agreement with Mr. Cochran?   No, sir.

" 'Mr. Purdy: It is sought to create an easement on the land of the defendant in favor of the plaintiff, and any testimony as to that would be incompetent.   It could only be created by deed.   We object to any evidence of any contract made between Mr. Cochran and Mr. Brown, Mr. Brown being the plaintiff, and Mr. Cochran being the section master.

" 'It develops here that he was undertaking to prove an agreement, the cutting of the ditch, the agreement being made by mere parol with Mr. Cochran.   Our objection was then made, and now renewed before your Honor, that Mr. Cochran has no authority whatever to create any easement or license on the land of the railroad company, of which he is a mere section master, and that he had no such authority; that the easement could be created only by a written instrument, and on those two grounds we make the objection.   It was the putting of an easement for the benefit of the plaintiff.

" 'The complaint does not say for the benefit of the railroad company, but only to carry off the water from the lands.   There isn't a word said about relieving the situation by taking the pressure off the tracks.   We are now advised for the first time that Mr. Brown is making his labors—was going to give a corporation, in which he had no interest, his money and his valuable time for his relief.

" 'Mr. Davis: The condition of the railroad track, which was soft and yieldy and hard to maintain.

" 'Court: Yes, sir; in paragraph five.   I think the testimony is competent.   Note those objections.   You can have the exceptions noted.

" 'Tell the contract between you and Mr. Cochran, Mr. Brown.   He said the water was doing him so much harm,

and caused him to do so much work, he wanted to haul in some dirt and raise or build up the bank three or four inches, and if I would cut the ditch—he said he didn't have but three hands to work fourteen miles, and he didn't have time to do the work; he would mark off the ditch, and if I would cut it he would put a pipe in there—an opening at pond "B." '

VII. "Again: There was error on the part of the presiding Judge in permitting the following question to be asked and answered over the defendant's objection in reference to cutting the ditch, viz.:

" 'You paid for it? Yes, sir.'

"The error being that there is no allegation in the complaint that any money was expended for cutting the ditch, and it was not made an element of recovery.

VIII. "There was error again in refusing to charge the eleventh request of the defendant, which is as follows:

" 'There is no element of wilfulness or wantonness, or any fact proven in this case, from which you can give any punitive damages upon any cause of action;' as the same contained a correct proposition of law, and it should have been so charged, there being no element of punitive damages proven in the case.

IX. "There was error on the part of the presiding Judge in refusing to charge the twelfth request of the defendant, which was as follows:

" 'If it has been shown that there has been any obstruction of water at pond "A," there is no allegation or proof that anything but surface water has been obstructed at that point, and you cannot give a verdict for any damages by reason of such obstruction at that point,—the plaintiff not having alleged or proven any prescriptive right to flow surface water under the railroad.'

"As it contained a correct proposition of law, and should have been so charged.

X. "There was error on the part of the presiding Judge in not sustaining the demurrer to so much of the complaint as is styled the first cause of action, in that there was no cause of action therein stated. The complaint, in so far as it attempted to charge any obstruction at the point referred to as pond B, charged the obstruction of surface water only, it not being alleged that a natural watercourse was obstructed, nor any facts stated from which it could be inferred that a natural watercourse was obstructed. There is no statement of fact going to show that there was a natural watercourse at that point leading in any given direction, and ending in any stream or body of water.

"It was sought to charge at pond A the obstruction of a ditch only, and there was no allegation that a natural watercourse was there obstructed, and no facts were stated going to show that the plaintiff had a prescriptive right or any other right to have the water flow through said ditch or to connect said ditch with his premises in any way whatsoever, so as to give him any rights as against the defendant.

XI. "There was error in not sustaining the demurrer as to the causes of action sought to be stated in so much of the complaint as is styled the second cause of action, upon the ground that in so far as it is sought to charge an obstruction at pond B, referred to in the complaint, it charges the obstruction only of surface water, and there are no facts alleged going to show that there was any natural watercourse at that point, or that there was any natural watercourse leading away from that point, leading into another stream of water, and in that there were no facts stated going to show that a natural watercourse obstructed at pond A, but the obstruction of a ditch only is charged, and the plaintiff has not alleged any prescriptive right in said ditch, and to have water drained through it, across the railroad, and has not shown that he has any right or easement therein; and there was error further in not sustaining the demurrer in so far as it was sought in the said cause of action to set

up a contract between the plaintiff and defendant in reference to cutting the ditch on the east side of the railroad, in that damages to crops and such damages as were alleged in the complaint could not be recovered, and only such damages as would arise from the cost of cutting the ditch, and no such damages were alleged."

*Messrs. Purdy & O'Bryan* and *Joseph F. Rhame,* for appellant. *Messrs. Purdy & O'Bryan* cite: *Railroad company has the right to do anything necessary to maintain its road:* 83 S. C. 319; 61 S. C. 554. *Remedy for breach of contract:* 9 Sm. & March 207; 8 Id. 327; 7 Metc. 57; 20 Pick. 134. *Right to drain water through land of another can only be acquired by deed:* 49 L. R. A. 515. *What is a natural watercourse?* 61 S. C. 552.

*Messrs. Davis & Weinberg,* contra, cite: *Formation of ponds:* 82 S. C. 172. *Duty of railroad in constructing embankment:* 71 S. C. 156, 244; 34 S. C. 66; 83 S. C. 315. *Damages recoverable:* 13 Cyc. 155-6; 63 S. C. 469; 57 S. C. 189. *Authority of general agent to employ subagents:* 1 Ency. 981; 74 S. C. 229; 1 Ency. 363. *What is surface water?* 24 Ency. 896, and notes; 61 S. C. 548; 57 Am. R. 75; 62 S. C. 18; 25 L. R. A. 527, note.

March 1, 1911. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff, on account of the overflowing of his lands, by the defendant.

The defendant demurred to the complaint on the ground that it did not state facts, sufficient to constitute a cause of action, in that it "charges only the damming up, and throwing back of surface water, which is not actionable, and as to which the defendant owes the plaintiff no duty." The demurrer was overruled.

The jury rendered a verdict in favor of the plaintiff for $250.00, and the defendant appealed upon exceptions, which will be reported.

The first question that will be considered is, whether there was error, on the part of his Honor, the presiding Judge, in overruling the demurrer, which is raised by the tenth and eleventh exceptions.

Paragraph IV, of the first cause of action, and paragraph V, of the second cause of action, set out in the complaint, allege that pond "B" contained spring as well as surface water, and was the head of a natural watercourse; also, that the defendant was negligent in constructing the road-bed through said pond.

In disposing of a similar question, the Court, in the case of *Rentz* v. *Ry.*, 82 S. C. 170, 63 S. E. 743, used this language: "The demurrer of the defendant assumed that the pond was created by the accumulation of surface water. Ponds are created, not only by the accumulation of surface water, but by springs in the pond, and by small streams emptying into it, which have a continuous flow. The complaint leaves in doubt, the manner in which the pond was formed. His Honor, the presiding Judge, was right in overruling the demurrer, and in ruling that the proper remedy of the defendant was to have made a motion, to make the complaint definite and certain."

The cases of *Wallace* v. *Ry.*, 34 S. C. 62, 12 S. E. 815; *Lampley* v. *Ry.*, 71 S. C. 156, 50 S. E. 794; and *Touchberry* v. *Ry.*, 83 S. C. 315, 65 S. E. 343, sustain the proposition, that even when a railroad corporation has the right to obstruct a watercourse, it is, nevertheless, liable for damages, if it is guilty of negligence. These exceptions are, therefore, overruled.

We proceed to the consideration of the first, second and third exceptions.

The general charge of the presiding Judge, the rulings upon the requests to charge, and the exceptions, are quite lengthy, and render it difficult to consider them in detail.

Our reasons, briefly and concisely stated, for overruling these exceptions, are, that when those portions of the charge set out in these exceptions are considered in connection with the entire charge, it will be seen that he clearly pointed out the difference between surface water and natural watercourses; and, we are satisfied, that when thus considered, it was not misleading.

In considering the fourth exception, we are unable to see, in what respect the modification was prejudicial to the rights of the appellant, and this exception, therefore, cannot be sustained.

In their argument, the appellant's attorneys do not discuss the fifth exception, further than to say: "We beg leave to refer to what we have already said in this connection, on the question of demurrer, without repeating it." We do not deem it necessary, to cite authorities to show, that this exception cannot be sustained.

The sixth exception must be overruled, for the reason that the testimony therein mentioned was admissible, at least, for the purpose of showing, that the defendant had knowledge of the fact, that it was injuring the lands of the plaintiff, in a manner alleged to be negligent, as the knowledge of the agent was received during a transaction pertaining to a matter, within the scope of its employment, and, therefore, imputable to his principal.

The seventh exception must be overruled, for the reason it does not appear, that objection was interposed to the introduction of the testimony therein set out, nor that it was prejudicial to the rights of the appellant.

The eighth exception is overruled, for the reason that the defendant failed to take action, although the

damaging condition of the pond and its surroundings were repeatedly brought to its attention.

The ninth exception is disposed of by what has already been said.

Affirmed.

MR. JUSTICE WOODS, *dissenting.* I dissent on the ground that there was no evidence of wilfulness or wantonness, and the Circuit Court should have charged, as requested, that punitive damages could not be recovered.