10059

### FREE v. PARR SHOALS POWER CO.
(97 S. E. 243.)

1. WATERS AND WATERCOURSES—NEGLIGENT CONSTRUCTION OF DAM—EVIDENCE.—In action for damages to land due to negligent construction and operation of a dam *held* that defendant's motion for directed verdict was properly denied.

2. WATERS AND WATERCOURSES — RIGHT TO DAM.—Although defendant had been given right to construct dam across Broad River by plaintiff's grantors as well as by act February 15, 1905 (24 St. at Large, p. 1032), and plaintiff purchased his lands subject to such right, defendant would be liable to plaintiff for damages to the lands due to negligent construction of dam.

3. WATERS AND WATERCOURSES — NEGLIGENT CONSTRUCTION OF DAM— PLEADINGS—SPECIAL INJURIES.—In action for damages to land due to negligent construction of dam which defendant had the right to construct under act February 15, 1905 (24 St. at Large, p. 1032), it was unnecessary for plaintiff to allege that the injuries to his lands were different in kind from injuries to other lands similarly situated, since it is only where injuries arise from nuisance *per se* that peculiar damage must be alleged.

Before Mauldin, J., Fairfield, ——— term. Affirmed.

Action by C. M. Free against the Parr Shoals Power Co. Verdict for plaintiff, and defendant appeals.

' *Messrs. R. B. Herbert, William Elliott* and *McDonald & McDonald,* for appellants. *Mr. Herbert* submits : *That the only damages for which defendant would have to answer would be damages affecting the plaintiff specially and peculiarly, and not general damages:* 54 S. C. 242; 32 S. E. 358; 46 S. C. 327. *There was no evidence to go to the jury tending to show that any act done by the defendant was the proximate cause of any of the alleged injuries sustained by the plaintiff:* 94 S. C. 934; 103 Va. 64, 66; 48 S. E. 508; 95 S. E. 183; 100 Va. 148, at pp. 153, 154; 40 S. E. 627, at page 629. *As to evidence on which it is sought to base an hypothesis:* Wigmore on Evidence, vol. I, sec. 31.

*Messrs. C. J. Kimball, Glenn W. Ragsdale* and *J. W. Hanahan,* for respondent, submit: *It has been repeatedly decided by this Court that a release from liability for dam-*

*ages presupposes the observance of due care by one who
claims immunity under it, and that it will not relieve any one
from responsibility for negligence:* 34 S. C. 62; 47 S. C.
484; 67 S. C. 781; 71 S. C. 156, 158; 83 S. C. 315; 88 S.
C. 15.  *That the question of proximate cause is for the
jury:* 93 S. C. 293; 54 S. C. 506; 55 S. C. 424; 56 S. C. 93;
62 S. C. 130; 65 S. C. 219; 77 S. C. 399; 78 S. C. 384; 76
S. C. 368; 78 S. C. 249; 68 S. C. 489; 1 Strob. L. 525; 51
S. C. 150; 68 S. C. 55.

July 24, 1918.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

This is an action for damages to land alleged to have been
sustained by the plaintiff, through the negligence of the
defendant, in the construction of a dam.

The following statement appears in the record:

"The plaintiff alleges in his complaint that he was the
owner of a tract of land of 209 acres near Broad River, in
Fairfield county, and that on or about the 15th of May,
1914, the defendant closed its dam at Parr Shoals, thereby
causing a great ponding of water in the vicinity of plaintiff's
lands, which caused the breeding of great numbers of mos-
quitoes, and the creation of very unhealthy conditions, by
reason of which plaintiff's land was made unhealthy, unin-
habitable, and untenantable, thereby greatly diminishing
said tract of land in value."

The plaintiff further alleged that the defendant was negli-
gent in the construction and operation of said dam, in that
it failed to clear off of the flooded area grass, bushes, trees,
and other debris, which debris, left in the water, caused
unhealthy conditions.

The defendant, answering the complaint, alleged that the
dam was built after authority to build same had been had
from the General Assembly of South Carolina, and denied
that the construction and operation was negligent, or that

the plaintiff had been damaged thereby. For a second defense the defendant set out that the plaintiff's tract of land was a part of a larger tract of land from which plaintiff had purchased 183 acres, and that in said instrument of conveyance was granted also the right to erect a dam to such height as may be desired for the full development of the water power, together with the further right in the defendant to overflow, by means of backwater, such of the said lands lying east of the railway, and that said lands of the plaintiff are a part of the lands lying east of the railway, and were acquired by the plaintiff subject to the easement of the defendant to flood same. The defendant made a motion for the direction of a verdict which was refused.

The jury rendered a verdict in favor of the plaintiff for the sum of $2,000, and the defendant appealed upon the following exceptions: (1) "That his Honor erred in declining to direct a verdict for the defendant on the ground that the undisputed testimony shows that the defendant acquired the right to overflow the lands in question by backwater, and there is no evidence tending to show that there has been any negligence on the part of the defendant in exercising the right conferred upon it by its easement and the act of the legislature."

(2) "Because his Honor erred in refusing to grant defendant's motion for the direction of a verdict, on the ground that there was no evidence to go to the jury tending to show that any act done by the defendant was the proximate cause of any of the alleged injuries sustained by the plaintiff; whereas, his Honor should have held that the evidence as to such injuries was too remote and speculative, and should have directed the verdict as requested."

The sole issue raised by the pleadings, as construed by his Honor, the presiding Judge, is whether there was negligence in the construction of the dam.

The act of 1905 (page 1032), under which the dam was built, provides:

"That the right, power and privilege to construct and maintain a dam or dams in and across Broad River, at or near the point or points aforesaid, be, and the same is hereby, granted to and conferred upon the Parr Shoals Power Company, together with the right, power and privilege to acquire by purchase or by condemnation proceedings, all lands which may be overflowed by the construction and maintenance of such dam or dams, as may be constructed and maintained under the power and authority conferred by this act: *Provided*, That this act shall be without prejudice to the rights of any person or persons aggrieved or damaged by the construction and maintenance of said dam."

The plaintiff purchased his lands subject to the defendant's right to build the dam, which right had been previously granted to the defendant by the plaintiff's grantors. Therefore the plaintiff is not entitled to recover any damages resulting from the erection of the dam, provided due care was exercised by the defendant in its construction. But neither the act nor the right granted by the plaintiff's grantors authorized the defendant to construct the dam in a negligent manner.

The question whether the plaintiff's damages arose from a public or private nuisance is not involved, as the plaintiff's action is based solely upon negligence. *Drews v. Burton & Co.*, 76 S. C. 362, 57 S. E. 176; *Barksdale v. Ry.*, 83 S. C. 287, 64 S. E. 1013; *Touchberry v. Ry.*, 83 S. C. 314, 65 S. E. 343; *Wallace v. Ry.*, 34 S. C. 62, 12 S. E. 815; *Leitzsey v. Power Co.*, 47 S. C. 464, 25 S. E. 744, 34 L. R. A. 215; *Nunnamaker v. Power Co.*, 47 S. C. 485, 25 S. E. 751, 34 L. R. A. 222, 58 Am. St. Rep. 905; *Jones v. Ry.*, 67 S. C. 181, 45 S. E. 188; *Lampley v. Ry.*, 71 S. C. 156, 50 S. E. 733; *Brown v. Ry.*, 88 S. C. 15, 70 S. E. 319.

The appellant's attorneys contend that damages are not recoverable by the plaintiff unless the injuries to his land were different in kind, and not merely in degree, from those

of other lands similarly situated, and rely upon the case of *Baltzeger v. Ry.*, 54 S. C. 242, 32 S. E. 358, 71 Am. St. Rep. 789. The facts in that case were, however, quite different from those herein, and the principles involved related to surface water.

It is only in cases where the injuries arose from a nuisance *per se* that it is necessary for the injured party to allege special or peculiar damages. *Woods v. Fertilizer Co.*, 102 S. C. 442, 86 S. E. 817, Ann. Cas. 1917d, 1149. But it cannot be successfully contended that the mere building of the dam was a nuisance *per se,* as its construction was authorized by the legislature, which has the power to declare what shall constitute a nuisance. As said by Mr. Justice Hydrick in said case:

"If it is a nuisance at all, it is what is called a 'nuisance *per accidens;*' that is, by reason of its location and other circumstances, such as the community in which it is located or the manner in which it is constructed or conducted. It follows that plaintiff's cause of action is based upon that which is *prima facie* a private nuisance, and, therefore, it was not necessary to the sufficiency of her complaint that she should have alleged injury to herself differing in kind from that suffered by others who may have been affected."

I shall quote only a small part of the testimony, for the purpose of showing that the allegations of the complaint were sustained, and that the motion for the direction of a verdict was properly refused.

Dr. J. A. Scott thus testifies: "I know that this sickness up on Mr. Free's place is due to the water being dammed up, without clearing off trees, undergrowth, weeds and stuff like that, and that stuff being allowed to remain in the water, and the water becoming stagnant and remaining there except in the main channel of the river. I know that it is an ideal place for breeding mosquitoes, and I know the conditions that existed there before that impounded water, the health conditions; there was no malaria. Since then I have had

a quantity of malaria along that ridge. If these trees and all this underbrush and undergrowth had been cleared away, and these low places filled up, before the water was impounded, that condition would not exist. I think if the water had been cleared of foliage, trees, bushes, and grass we would have had an open lake there, and I think the wave action or winds would have kept the mosquitoes from breeding."

Dr. J. E. Douglass testifies as follows: "The water in the river was stagnant water. There were trees, bushes, and other vegetation in the river, all of it was standing there. There is no effort whatever made to clear away the pond. That would be an ideal place for the breeding of mosquitoes of all kinds. I think all of the profession now believe that the Anopheles mosquito is the cause of malaria. The whole profession believed for a long time that miasma and swamps was the cause. I have made a study of the mosquito. I have read a good many articles about them in journals, papers, books, and so on, United States government experiments. The mosquito that causes malaria is the female Anopheles mosquito."

And Dr. W. C. Gorgas thus testifies: "Q. If this area right around the edges of the water is cleared off, and is perfectly free of grass and bullrushes and other small undergrowth—pine needles and other stuff like that—would not that eliminate entirely the breeding place for this mosquito along the edges of the water? A. If it were sufficiently carefully cleared off and otherwise protected, it would eliminate practically entirely the breeding of all mosquitoes."

Affirmed.