### BELTON v. WATEREE POWER CO.

(115 S. E., 587)

1. NUISANCE—EVIDENCE HELD TO SHOW PREVALENCE OF MOSQUITOES DUE TO POND WAS NOT CONFINED TO PLAINTIFF'S PREMISES.—In an action for damages from the erection of a dam creating a pond claimed to constitute a breeding place for malaria-bearing mosquitoes, evidence *held* to show that the prevalence of the mosquitoes was not confined to plaintiff's premises, but extended generally to all within a radius of a mile and a half from the pond.

2. NUISANCE—INDIVIDUAL NOT SUFFERING PECULIAR DAMAGE FROM MOSQUITOES BREEDING IN POND NOT ENTITLED TO RECOVER.—Where the activities and effects of malaria-bearing mosquitoes breeding in defendant's pond constructed under authority of its charter were not confined to plaintiff's premises, but were prevalent in the whole community, the damage suffered by plaintiff was not peculiar to himself or different in kind from that suffered by the public generally, and the nuisance was a public nuisance, and plaintiff could not recover in the absence of negligence.

3. NUISANCE—ACT AUTHORIZED BY LEGISLATURE NOT PUBLIC NUISANCE.—If an Act claimed to have been noxious to plaintiff was authorized by the Legislature, it cannot be considered a public nuisance, and plaintiff can recover damages only on the theory that the injury was caused by the negligent exercise of the legally authorized Act.

4. NUISANCE—INDIVIDUAL CAN RECOVER ONLY FOR INJURY DIFFERENT IN KIND FROM THAT SUFFERED BY PUBLIC.—If an act constituted a public nuisance, plaintiff can recover damages only for an injury different not only in degree but in kind from that suffered by the public generally.

5. EMINENT DOMAIN—STATUTE AUTHORIZING NOXIOUS ACT NOT DEFENSE WHEN INDIVIDUAL SUFFERS INJURY PECULIAR TO HIM.—If a noxious act results in an injury peculiar to plaintiff or some special inconvenience or discomfort not experienced by the public at large, defendant cannot invoke the protection of any Statute purporting to authorize it, in view of the constitutional provision forbidding the taking of private property for a public use without just compensation.

NOTE: On the question of effect of legislative authority on liability for private nuisance, see notes in 14 L. R. A., 487; 59 L. R. A., 61; 1 L. R. A. (N. S.), 49, and 46 L. R. A. (N. S.), 117.

6. EMINENT DOMAIN—POWER COMPANY NOT BOUND TO CONDEMN
LANDS OF ONE NOT SUSTAINING PECULIAR INJURY.—Under Acts
1909, p. 400, incorporating a power company and authorizing it to
condemn lands, etc., necessary for its power plant and dams, the
company was under no duty to condemn the rights of one who
suffered no injury peculiar to himself from the construction of the
dam and impounding of the waters.

7. NUISANCE—INCIDENT OF ERECTION OF DAM AUTHORIZED BY LEGIS-
LATURE NOT A NUISANCE.—Assuming that the breeding of malaria-
bearing mosquitoes is incidental to the impounding of waters in a
pond, by means of a dam constructed by the power company char-
tered by Acts 1909, p. 400, the incident was authorized by Act of
the Legislature and cannot be considered a public nuisance subject-
ing the company to indictment.

8. EMINENT DOMAIN—ASSUMED, IN ABSENCE OF SHOWING TO CON-
TRARY. THAT DAM WAS CONSTRUCTED WITHOUT NEGLIGENCE.—In an
action for damages alleged to have been caused by construction of
dam by company chartered by Acts 1909, p. 400, where there was
no evidence of negligent construction, it would be assumed that the
cause of the injury was incidental to the exercise of the legal au-
thority to construct the dam and without negligence.

9. EMINENT DOMAIN—CAUSE OF ACTION OF ONE PECULIARLY INJURED
BY AUTHORIZED DAM IS FOR COMPENSATION IN ABSENCE OF NEGLI-
GENCE.—Though plaintiff sustained an injury peculiar to himself
from the breeding of malaria-bearing mosquitoes in a pond created
by a dam constructed under Acts 1909, p. 400, his cause of action,
in the absence of negligence in the construction of the dam, was
for compensation under the Statute; the damage being conse-
quential.

10. EMINENT DOMAIN—ONE TAKING POSSESSION WITHOUT CONSENT OR
CONDEMNATION IS TRESPASSER AND LIABLE TO DAMAGES, BUT CANNOT
BE EJECTED.—Where a corporation having the right of condemna-
tion takes possession of another's property without his consent,
express or implied, and without condemnation, it becomes a tres-
passer and may be held liable in damages for the unauthorized
entry, but may retain possession upon payment of due compensa-
tion and cannot be ejected as an ordinary trespasser.

11. EMINENT DOMAIN—ONLY REMEDY IS UNDER CONDEMNATION STATUTE
WHEN POSSESSION TAKEN BY CONSENT.—Where entry is made by a
corporation having the right of condemnation, with consent of the
owner, express or implied, the owner's remedy is exclusively under
the condemnation Statute.

12. EMINENT DOMAIN—SALE OF OTHER LAND TO DEFENDANT HELD TO
RESTRICT PLAINTIFF TO PROCEEDING UNDER STATUTE.—One convey-

ing a part of his land to defendant to be flooded by a dam impliedly consented to defendant's entry on the land, and even though entitled to recover consequential damages to other lands, if there had been no entry, is limited to an action for compensation under the Statute authorizing the construction of the dam.

Before RICE, J., Fairfield, September, 1921. Reversed.

Action by George D. Belton against Wateree Power Co. From a judgment for plaintiff defendant appeals.

*Messrs. Gaston & Hamilton,* for appellant, cite: *Plaintiff not riparian owner:* 27 R. C. L., 1074. *Rights of pond owner:* 27 R. C. L., 1194, 1195; 20 R. C. L., 436. *No liability without negligence:* 114 S. C., 192; 113 Minn., 33; Ann. Cas., 1912A, 108; 22 Ann. Cas., 108; 12 Cust., 177; 26 N. E., 229. *Proximate cause:* 173 S. W., 929; 18 Neg. & C. Cas., 847.

*Messrs. McDonald & McDonald* cite: *What amounts to taking property:* 80 U. S., 166; 99 U. S., 635; 125 U. S., 161; 153 U. S., 380; 166 U. S., 269; 172 U. S., 82; 192 U. S., 217; 233 U. S., 546; 58 L. R. A., 628; 207 Fed., 897; 51 L. R. A. (N. S.), 236; 46 Fed., 738; 10 R. C. L., 66, 67; 95 S. C., 268. *Negligent construction:* 34 S. C., 62; 47 S. C., 184; 67 S. C., 194; 70 S. C., 531; 71 S. C., 158; 71 S. C., 244; 83 S. C. 319; 88 S. C., 29; 111 S. C., 195; 6 A. L. R., 1326; 17 L. R. A., 628; 7 R. C. L., 685; 26 R. C. L., 772; 114 A. S. R., 475; 46 S. E., 381; 52 S. E., 970. *Rule as to communicated fires:* 2 Strob. L., 356; 1 Civ. Code 1912, Sec. 3226; 38 S. C., 301; 24 S. C., 366; 31 S. C., 378; 81 S. C., 567; 11 R. C. L., 961–2; 36 S. C., 93; 72 S. C., 112; 10 S. E., 29. *No recovery in absence of negligence:* 25 Vt., 49; 10 S. E., 29; 72 Iowa, 182; 51 Me., 318; 16 A. S. R., 479; 85 N. Y. Supp., 404; 50 Am. Dec., 283; 94 Am. Dec., 84; 2 A. L. R., 618; 125 A. L. R., 179; 116 A. L. R., 868; 41 A. L. R., 454; 23 N. Y., 42; 88 N. Y., 351; 124 N. Y., 602; 48 L. R. A. (N. S.), 463.

*Messrs. J. W. Hanahan* and *Ragsdale & Ragsdale,* for respondent, cite: *Case concluded by:* 95 S. C., 268; 104 S. C., 311. *Legislative authority does not extend to creating nuisance:* Cooley, Torts, Sec. 311; 1 Lewis, Em. Dom., Sec. 236; Wood, Nuisances, Chap. 13, 14. *Intervening cause may be proximate cause:* 101 S. C., 63; 7 Wall., 44; 76 S. C., 204; 1 Strob., 525; 54 S. C., 498; 13 Cyc., 25. *Similar cases:* 164 S. C., 133; 111 S. C., 192. *Taking private property:* 119 S. C., 319; 5 Rich., 583; 67 S. C., 515; 1 Lewis, Em. Dom., 58; 2 Farnum, Waters, etc., 1532; 15 Cyc., 753; 105 S. C., 180; 108 U. S., 317; 25 Wend., 462; 5 Cow., 165; 27 Barb., 513; 44 N. H., 143; 14 Conn., 152; 233 U. S., 546.

December 29, 1922.

The opinion of the Court *en banc* was delivered by MR. JUSTICE COTHRAN.

Action for $2,000.00 damages on account of injury alleged to have been sustained by the erection of a certain dam across the Wateree or Catawba River at Getty's Shoals. It is alleged that the dam raised the water in the channel of the river and the streams, ditches, drains, and hollows upon the plaintiff's land, throwing it back upon the bottom land, obstructing the natural drainage, and injuring it for agricultural purposes; and that the backwater caused the formation of pools and stagnant water on or near plaintiff's land, providing a breeding place for mosquitoes of the malaria-bearing species, which have caused the tenants upon the place to become sick, thereby creating health conditions which render the land unfit for residential purposes and greatly depreciating its value.

From a judgment in favor of the plaintiff, the defendant has appealed.

There was no evidence at all tending to sustain the allegation of injury to the plaintiff's land by backwater upon his bottoms. He lived about a mile and a half from the

pond, and the nearest point on his land was half a mile from the pond. He testified:

"I have some bottom land on all the creeks. There has been no water on it, no more than where you come to these big rains and the creek would overflow. It does not overflow now, not more than when the pond was not there."

So that his case is to be considered with reference only to the allegation that the pond caused stagnant pools which bred malarial mosquitoes, causing sickness, the removal of his tenants, and consequent depreciation of the value of his land.

One of the plaintiff's witnesses testified that he had made a careful investigation and search for the malaria-bearing mosquitoes about plaintiff's premises, found practically none in the pond, but "we went to the spring about 150 yards north of the house, and in this branch we found mosquitoes; the Anopheles (malaria-bearing) mosquitoes breeding in profusion" (Dr. Hamilton). Other witnesses gave testimony tending to show that the pond greatly increased the prevalence of mosquitoes in the immediate locality, and in this discussion that fact may be assumed. That the prevalence of the pest was not confined to the plaintiff's premises, but extended generally to all within a radius of a mile and a half from the pond, is shown by the testimony of the witnesses for the plaintiff: Dave Robertson: "After the dam was closed and the pond put there, there was plenty of chills and fever. It was from house to house"; that he lived 1½ miles from plaintiff and had malaria after the pond was created though he had had none before; that John Belton a mile away also had had sickness. Major Bush lived three-quarters of a mile from plaintiff and had had it under similar circumstances; had heard of several others in the neighborhood being taken sick. A. W. Mathewson: "Knew of other cases of malaria all around down there everywhere"; he lived a mile from the pond and had chills and fever on his place; never

heard of malaria there before the pond was there; that parties living on the highest hills in Fairfield County were having chills on the Longtown road two miles from his house; heard different ones say that they could hardly rest at night for mosquitoes. Dr. Douglas: Had been going down there since 1919 when dam was closed, treating malaria. The questions put to Dr. Douglass by the attorneys for the plaintiff indicate their conception of the situation:

"If you had found down on this river, before the pond was put there, that there was very little malaria, and that malaria was only occasional on the river, and after this immense pond was put there you found all the neighborhood had malaria, what would you say caused it?" "If you find a large area of water like they have out here on the Wateree River when that pond is up, malaria is prevalent, everybody in the neighborhood having it one year when the pond is up, the whole region around there is flooded, etc.?"

Dr. Hamilton: "A portion of that section lies along the pond. Its proximity extends as far back as eight miles of the pond on the branches and creeks running in and out of the pond. Malaria was prevalent there last year."

The testimony for the plaintiff thus showing that the activities and effects of the mosquitoes were not confined to the premises of the plaintiff, but were prevalent in that whole community, it has been demonstrated that the damage suffered by the plaintiff was not peculiar to himself. It shows that the nuisance was a public nuisance and not a private nuisance, and the law is well settled that the plaintiff is not entitled to damages for an injury resulting from a public nuisance unless his injury is not only different in degree but different in kind from that suffered by the public generally, or that the nuisance has been caused by the negligent conduct of the defendant.

The following principles have been established beyond controversy:

1. If the act claimed to have been noxious to the plaintiff was authorized by the Legislature, it cannot be considered a public nuisance, and the plaintiff can recover damages only upon the theory that the injury was caused by the negligent exercise of that legally authorized act. *Wallace v. R. Co.*, 34 S. C., 62; 12 S. E., 815.

2. If the act claimed to have been noxious to the plaintiff constituted a public nuisance, the plaintiff can recover damages only upon the theory that the injury sustained by him was different not only in degree but in kind from that suffered by the public generally.

3. If the act claimed to have been noxious to the plaintiff resulted in an injury peculiar to him, some special inconvenience or discomfort not experienced by the public at large, the defendant cannot invoke the protection of any statute purporting to authorize the act, for it would be in violation of the Constitution, which forbids the taking of private property for public use without just compensation.

The case of *Richards v. Washington Terminal Company*, 233 U. S., 546; 34 Sup. Ct., 654; 58 L. Ed., 1088; L. R. A. 1915A, 887, is an exceedingly interesting one, and particularly instructive in the present emergency, for the reason that it contains a clear differentiation between items of damage common to the public generally, and those peculiar in kind suffered by the plaintiff; the complaint claiming damages on account of each. The facts were as follows:

The terminal company owned the tunnel which extends from one side of Washington to the other, passing under the Capitol and the Library grounds. It also owned the double track therein, its ownership of it ceasing at the south portal or mouth of the tunnel. The tunnel and tracks were built upon property acquired by purchase or condemnation proceedings and were constructed under authority of the Acts of Congress and of permits issued by the municipal authorities. The plaintiff owned a house a little over 100

feet from the south portal of the tunnel. His action was: (1) For the injury to his premises by the volumes of dense black or gray smoke, and also by dust and dirt, cinders and gases emitted from the trains while passing over the tracks in and out of the tunnel, or standing upon the tracks near the signal tower. (2) For the injury to his premises by the gases and smoke emitted from locomotive engines while in the tunnel and forced out of it by means of the fanning system through the portal located near to plaintiff's property.

As to the first ground of alleged damage the Court held that the plaintiff was not entitled to recover, declaring:

"The Acts of Congress referred to, followed by the construction of the tunnel and railroad tracks substantially in the mode prescribed, had the effect of legalizing the construction and operation of the railroad, so that its operation while properly conducted and regulated, cannot be deemed to be a public nuisance. * * * Railroads constructed and operated for the public use, although with private capital and for private gain, are not subject to actions in behalf of neighboring property owners for the ordinary damages attributable to the operation of the railroad, in the absence of negligence. Such roads are treated as public highways, and the proprietors as public servants, with the exemption normally enjoyed by such servants from liability to private suit, so far as concerns the incidental damages accruing to owners of nonadjacent land through the proper and skillful management and operation of the railways. Any diminution of the value of property not directly invaded nor peculiarly affected, but sharing in the common burden of incidental damages arising from the legalized nuisance, is held not to be a 'taking' within the constitutional provision. The immunity is limited to such damages as naturally and unavoidably result from the proper conduct of the road, and are shared generally by property owners whose lands lie within range of the inconveniences necessarily incident

to proximity to a railroad. It includes the noises and vibrations incident to the running of trains, ·the necessary emission of smoke and sparks from the locomotives, and similar annoyances inseparable from the normal and non-negligent operation of a railroad. * * * That the constitutional inhibition against the taking of private property for public use without compensation does not confer a right to compensation upon a landowner no part of whose property has been actually appropriated, and who has sustained only those consequential damages that are necessarily incident to proximity to the railroad."

As to the second ground of alleged damage, the Court held that the plaintiff was entitled to recover, that is, for the damages caused by the gases and smoke emitted from engines while in the tunnel, and forced out of it by means of the fanning system through the portal located practically at the plaintiff's door. The basis of the liability was distinctly placed upon the fact that the plaintiff had suffered special inconvenience and discomfort, a burden direct, not experienced by the public at large, and unnecessarily imposed. The Court cites and relies upon the case of *B. & P. R. R. Co. v. Baptist Church,* 108 U. S., 317; 2 Sup. Ct., 719; 27 L. Ed., 739, and says, commenting on it:

"While recognizing that the Legislative authority for operating a railway carried with it an immunity to private action based upon those incidental inconveniences that are unavoidably attendant upon that operation of a railroad, nevertheless [the Court] sustained the right of action in a case where a building for housing and repairing engines was unnecessarily established in close proximity to a place of public worship" so that the noises and other incidents of its operation created a constant disturbance of the religious services.

The reasoning of the Court is not quite clear upon the element of necessity. They say that the doctrine of immunity being founded upon necessity is limited accordingly,

and quote from the Baptist Church case in which the liability
is apparently placed upon the fact that it was not necessary
that the house be placed in that exact location; and at the
same time declare that "this circumstance, however, does
not, as we think, afford sufficient ground for a distinction
affecting the result." The necessary effect of this ruling is
to relegate both cases to the common ground of a direct, pe-
culiar, and substantial burden imposed upon the plaintiff,
not experienced by the public at large.

The Court further declares:

"If the damage [that is, I assume, the damage of a direct,
peculiar and substantial burden] is not preventable by the
employment of reasonable expense of devices such as have
been suggested [the installation of ventilating shafts or other
devices 'for preventing the outpouring of gases and smoke
from the entire length of the tunnel at a single point upon
the surface' which constituted a direct, peculiar and sub-
stantial injury of the plaintiff], then plaintiff's property
is 'necessary for the purpose contemplated,' and may be ac-
quired by purchase or condemnation,  *  *  *   and pend-
ing its acquisition defendant is responsible. If the damage
is readily preventable, the statute furnished no excuse and
defendant's responsibility follows on general principles"—
a declaration entirely true if the injury to the plaintiff was
the result of the nuisance, direct, peculiar, and substantial,
but not at all applicable if the injury was the result of a pub-
lic nuisance legalized by the Act, as the Court had already
determined in reference to the alleged ground of damage
founded upon the "volumes of dense black or gray smoke"
and the "dust and dirt, cinders and gases, emitted from the
trains while passing over the tracks and in and out of the
tunnel or standing upon the tracks near the signal tower."

This is in entire accord with the decisions of this Court.

In *Steamboat Co. v. R. Co.,* 46 S. C., 327; 24 S. E.,
337; 33 L. R. A., 541; 57 Am. St. Rep., 688, the Court
reaffirmed the following quotation from *Steamboat Co. v.*

*R. Co.,* 30 S. C., 539; 9 S. E., 650; 4 L. R. A., 209; 14 Am. St. Rep., 923:

"That the injury must be particular—as several of the cases express it, 'special or peculiar'—must result directly from the obstruction [nuisance] and not as a secondary consequence thereof, and must differ in kind, and not merely in extent or degree, from that which the general public sustains."

In *Cherry v. Rock Hill,* 48 S. C., 553; 26 S. E., 798, which was an action by an individual for damages on account of an alleged nuisance, the Court said:

"As there is no allegation in the complaint that the plaintiff, by reason of the acts of the defendants, has sustained any special or peculiar injury, differing in kind from that which the public generally has sustained, it is obvious that the complaint fails to state facts sufficient to constitute a cause of action either for injunction or for damages."

In *Baltzegar v. R. Co.,* 54 S. C., 242; 32 S. E., 358; 71 Am. St. Rep., 789, it is held that a complaint for nuisance alleging no damages special or peculiar to plaintiff, as distinguished from those sustained by the general public, does not state a cause of action. In a very clear opinion by the present Chief Justice it is shown that the test of a public nuisance is not the number of persons annoyed, but the possibility of annoyance to the public by invasion of its rights, the fact that it is in a public place and annoying to all who come within its sphere. In that case the plaintiff claimed that the act of the defendant in obstructing the flow of surface water, and causing an accumulation thereof, rendered his dwelling unhealthy and dangerous to live in and caused sickness and suffering to his family; it was held not an allegation of injury peculiar to himself, different in kind from that suffered by the public.

In *Manson v. R. Co.,* 64 S. C., 120; 41 S. E., 832, which was an action to enjoin the Seaboard Air Line from de-

stroying Sidney Park in the City of Columbia and converting it into a railroad yard, it was held that as the plaintiff was not an abutting owner and could not show that he had sustained injury different in kind from that which might reasonably be expected to be suffered by those "in the neighborhood," although differing in degree, he had no *locus, standi*. The present Chief Justice cited in support of the Court's conclusion the Cherry Case; High on Inj., §§ 1298–1301; 10 A. & E. Enc. Pl. & Pr., 897–900. In the last-named authority it is said (quoted by the Court):

"A private individual is a proper party plaintiff where the injuries which he will sustain are special and particular differing in kind and not merely in degree from those which the public at large will suffer."

In *McMeekin v. Power Co.,* 80 S. C., 512; 61 S. E., 1020; 128 Am. St. Rep., 885, the Court says:

"The obstruction of a navigable stream is a public nuisance and the remedy is by indictment, unless the person instituting proceedings on the civil side of the Court can show special or peculiar damages, differing in kind from those to which all others in common with him are exposed."

In *Gray v. R. Co.,* 81 S. C., 370; 62 S. E., 442, it is said:

"The exception to the rule [that an indictment is the remedy for a public nuisance] is that a private citizen may maintain a civil action for damages or abatement with respect to a public nuisance upon allegation and proof of such obstruction and of direct and special damages resulting to him, different in kind from what the public may sustain."

In the Baptist Church case, *supra,* it is declared:

"The legislative authorization exempts only from liability to suits, civil or criminal, at the instance of the State; it does not affect any claim of a private citizen for damages for any special inconvenience and discomfort not experienced by the public at large."

I do not agree with the declaration of the learned Chief Justice:

"In the first place, it will be observed that the provision as to condemnation proceedings is mandatory."

I do not find any warrant for this position in the act of charter, nor do I see the pertinency of the observation. Unquestionably the defendant could acquire all rights necessary for its purpose by purchase as well as condemnation. If the observation was intended simply as limiting the power of acquisition either by purchase or condemnation, to those rights necessary for the corporate purpose of the defendant, I thoroughly agree. The remainder of the paragraph is subject to the explanation of a similar statement given above in the Richards case; it is entirely true, if the injury to the plaintiff was the result of a private nuisance, or a public nuisance when the injury was direct, peculiar, and substantial, but not at all applicable if the injury was the result of a public nuisance, legalized by the act, where the injury to the plaintiff was not direct, peculiar, and substantial, differing in kind, etc.

To hold that the duty to condemn the right of the plaintiff to be free from mosquitoes appears to me to be an assumption of the very point in controversy, the character of the alleged nuisance as private, or as public with special injury to the plaintiff; and to annihilate the policy which prescribes an indictment as the appropriate remedy in order to avoid a multiplicity of suits at the instance of individuals sustaining a common injury. If the duty was mandatory, so far as the plantiff is concerned, why is it not so in reference to each individual residing within the mosquito zone of from $1\frac{1}{2}$ to 8 miles in diameter, affected as the plaintiff was? The multitude of such individuals, as shown by the plaintiff's evidence, is conclusive proof of the fact that the injury to the plaintiff was not of that direct, peculiar, and substantial character from which the public generally has not suffered.

In *Haggart v. Stehlin*, 137 Ind., 43; 35 N. E., 997; 22 L. R. A., 577, it is held, quoting from *Wood on Nuisance*, §§ 645 and 646:

"No person can maintain a private action for a mere public or common nuisance, for the reason that the exercise of such a right would lead to a great multiplicity of suits, and endless interminable litigation."

I am not sufficiently informed as to the habits of the *Anopheles quadrimaculatus* or *punctipennis* (the malaria-bearing mosquitoes) to know whether or not their breeding is a necessary incident of the creation of such a pond of water as is in this case. There is testimony tending to show that there is less likelihood of such an event in such a pond than in small stagnant pools. But assuming that it is incidental, the incident has been authorized by the Act of the Legislature and cannot be considered a public nuisance subjecting the donee of the power to indictment; and .the plaintiff has no. private cause of action without showing, either that the authority conferred has been so negligently exercised as to produce the nuisance, or that his injury has been peculiar in kind to himself. The attorneys for the plaintiff appear to have recognized the obligation of alleging negligence, for the complaint abounds in virulent expressions of such a delict, with vituperative epithets. Their evidence is entirely lacking to support them: As Judge Memminger remarked upon occasion:

"The force and vigor of the war has fallen far short of the fine phrases of the manifesto."

Not only this, but the testimony, so far from showing an injury peculiar to the plaintiff, was abundant that the whole neighborhood for miles around was similarly affected—"a vaulting ambition that o'erleaps itself and falls on t'other side."

It seems to me. that the *Wallace Case*, 34 S. C., 62; 12 S. E., 815, is conclusive of the one proposition, and the *Balt-*

*zeger Case,* 54 S. C., 242; 32 S. E., 358; 71 Am. St. Rep., 789, of the other.

In the Wallace Case it was held that in an action against a railroad company for damage done to plaintiff's land, through which the railroad company had acquired a right of way, by the obstruction of a stream, the complaint failed to state sufficient facts, in not alleging negligent construction of the roadbed. "There must be some allegations of fact showing that the defendant in doing the act which it was authorized to do has either wantonly or through negligence done the act in such a manner as unnecessarily impaired or injured the rights of the plaintiff."

The Baltzeger case has already been referred to.

In *Lampley v. R. Co.,* 71 S. C., 156; 50 S. E., 773, it is held that a railroad company having obtained a right of way had the right to obstruct watercourses and is not liable to a landowner for flooding his land, in the absence of evidence showing a negligent construction, following the Wallace case.

"Where a railroad company, under the statute, has a right to construct its railroad, and has entered with the expressed or implied permission of the owner, it is not liable as a trespasser to adjacent landowners, under the common law, for the act and result of construction with due care, since the law will not declare that to be a nuisance or trespass which it had authorized." *Johnson v. R. Co.,* 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572.

In *Lawton v. Ry. Co.,* 75 S. C., 82; 55 S. E., 128, the action was for the negligent construction of an embankment across a watercourse in consequence of which the plaintiff's lands were injured. So were *Jones v. R. Co.,* 67 S. C., 181; 45 S. E., 188; *Free v. Parr Shoals Co.,* 111 S. C., 192; 97 S. E., 243.

Another consideration is, I think, decisive of the appeal: Upon the facts of the case developed by the testimony for the plaintiff alone, he was entitled only to a recovery of com-

pensation under ·condemnation proceedings, and not to an action for damages.

There was an allegation of negligent construction, but no evidence of it. It would be assumed then that the cause of the plaintiff's injury was incidental to the exercise of the defendant's legal authority to construct the dam and impound the water, and. without negligence on its part. If so, the plaintiff's cause of action was for compensation under the statute, regardless of the fact that the injury may have been peculiar to him, in the sense above indicated.

Of course, if the injury resulted from a cause not incidental to the legally authorized construction, and constituted a public nuisance, the defendant could claim no protection from the act of charter, so far as relieving it from the charge of creating a nuisance is concerned; and in that event the plaintiff would be entitled to recover for an injury peculiar to himself; or, if the works were negligently constructed, he would be entitled to recover, regardless of whether or not the cause was a public nuisance or the injury peculiar to himself.

But when it appears, as I think it does, that the works were authorized by statute, and, therefore, not a public nuisance, and that the cause of injury was incidental to the construction, and, therefore, a necessary, inevitable result of it, I think that the authorities in this State are conclusive of the proposition that the plaintiff's only remedy was under the condemnation statute.

The rule as established by the decisions of this Court is that where the right of condemnation exists and the corporation takes possession of the property of another, without the consent of the owner, express or implied, or by condemnation, it becomes a trespasser and that, while it may be made liable in damages for such unauthorized entry, it may not be ejected as an ordinary trespasser; that, having the right to take the property under condemna-

tion, it may retain possession upon payment of due compensation to the owner for the taking. *Cayce Land Co. v. R. Co.,* 111 S. C., 115; 96 S. E., 725; *Ingleside Co. v. Light & Power Co.,* 76 S. C., 95; 56 S. E., 664.

But where the entry has been made with the consent of the owner, express or implied, the owner's remedy is exclusively under the condemnation statute. In the former case the compensation is ascertained under the statute, if the right to compensation is admitted; or by an action for damages, if it is denied. In the latter case, the remedy under the statute is exclusive.

In the case at bar there has been no entry upon the property of the plaintiff; the damage, if any, is shown to have been entirely consequential from a lawful entry upon other lands as to which the plaintiff was not required to be consulted.

If it should be held, nevertheless, that this presents a case of entry where the plaintiff would be entitled to damages if there has been an entry without his consent, the evidence shows as strongly as it does in the Leitzsey case, that the plaintiff was fully aware of the development and made no objection; in fact, he conveyed to the defendant a part of his land which was to be flooded by the dam; and that, therefore, his consent will be implied.

In the case of *Leitzsey v. Water Power Co.,* 47 S. C., 464; 25 S. E., 744; 34 L. R. A., 215, affirming and followed by other cases, the plaintiff owned land on the west side of and adjacent to Broad River. The defendant was authorized by its charter, or that of its predecessor, to erect a dam across the river for the purpose of developing the canal. The plaintiff alleged that, by reason of the maintenance of the dam, the water was raised six feet in the channel, thereby obstructing the flow, preventing the usual drainage of the lands, causing frequent overflows and the destruction of his crops. The power company was authorized to condemn rights of way necessary for its purpose. The plaintiff

brought an action for damages, and the defendant demurred upon the ground that the remedy under condemnation proceedings was exclusive; there being no allegation that the dam was negligently constructed. The demurrer was sustained by the Circuit Judge, and on appeal his order was affirmed by this Court. There it appeared that the nuisance was a private one, affecting the plaintiff peculiarly; but the Court held that the remedy under the statute was exclusive —a much stronger case for the plaintiff than the case at bar, where the nuisance was a public one, and the plaintiff not peculiarly affected. There can arise no question of the plaintiff being deprived of his property without compensation, as the Court very clearly shows:

"Of course, the permission granted by plaintiff to the Board of Trustees to enter for the construction of the dam and appurtenances [a permission, I will add, which arose by implication only, as it does in the case at bar] did not deprive the plaintiff of his constitutional right of compensation, for which a remedy was provided; it simply relieved the Board of Trustees so entering from the character (imputation?) of trespassers. *Tompkins v. R. Co.,* 21 S. C., 431. Neither is the defendant grantee a trespasser for continuing the use. The remedy provided by the statute is exclusive"—citing *McLauchlin v. R. Co.,* 5 Rich., 584; *Fuller v. Edings,* 11 Rich., 239; *Verdier v. R. Co.,* 15 S. C., 483; *Sams v. R. Co.,* 15 S. C., 487; *Ross v. R. Co.,* 33 S. C., 477; 12 S. E., 101.

See, also, *Touchberry v. R. Co.,* 83 S. C., 315; 65 S. E., 341.

In *Garraux v. Greenville,* 53 S. C., 575; 31 S. E., 597, it is held, citing the Leitzsey case:

"In reference to the remedy for compensation for right of way provided by statute, this Court has repeatedly held that such remedy is exclusive."

In *Rankin v. R. Co.,* 58 S. C., 532; 36 S. E., 997, it is held:

"A railroad corporation, chartered under the laws of this State, and authorized to construct a railroad, is not a trespasser for entry upon lands for the purpose of such construction, unless such entry is made without the consent of the owner, and it is necessary to the cause of action to allege the absence of such consent. *Tompkins v. R. R.,* 37 S. C., 382. The complaint, then, is fatally defective for failure to make such allegation. So far as the complaint shows, the only objection ever made by plaintiff was as to cutting down the two oaks, and it appears that they were not cut down. As the route of the railroad was very near plaintiff's dwelling, she must have had knowledge of the first entry for construction, and having made no objection thereto in the manner required by statute, her consent would be presumed, and her only remedy would be for compensation under the condemnation statutes."

In *Johnson v. R. Co.,* 71 S. C., 241; 50 S. E., 775; 110 Am. St. Rep., 572, it is held:

"In all cases, except where the right to compensation is disputed, or where the owner has not actually or constructively permitted the entry for construction, the remedy afforded by the condemnation statute is exclusive."

As a matter of supreme public concern the affirmance of this judgment, opening the floodgates of litigation, will not only bankrupt the useful institutions which mark the progress of this State, but will bar forever the development of millions of horsepower in the streams that now "run wanton to the sea."

For these reasons the judgment should be reversed, and it is so ordered.

MR. JUSTICE MARION, and CIRCUIT JUDGES MEMMINGER, DEVORE, SHIPP, SEASE and PEURIFOY concur.

MR. CHIEF JUSTICE GARY (dissenting): This is an action by the plaintiff to recover damages alleged to have been sustained by him through the erection and closing of a dam across the waters of the Catawba or Wateree River, thereby

creating a large pond of water and causing injury to the plaintiff's lands, rendering them unfit for residential purposes, greatly depreciating and destroying the value thereof.

The complaint is as follows:

"1. [This paragraph merely contains formal allegations, which are admitted.]

"2. That the plaintiff is, and was at the times hereinafter mentioned, seized and possessed as owner in fee.simple of the following tract of land, to wit: All that certain piece, parcel or tract of land lying, being and situate in the County of Fairfield, and State aforesaid, containing 188 acres, more or less.   *   *   *

"3. That heretofore the defendant erected and closed a dam across the channel of the Catawba or Wateree River at Getty's Shoals and is maintaining the same across the channel of the said river, whereby a great lake or pond of water has been created, extending for many miles above and below . plaintiff's said lands and spreading out so as to reach within a distance of one mile of plaintiff's home and living habitations, causing the formation of pools of standing and stagnant waters on or near to plaintiff's said lands, and creating great swarms of malaria-bearing mosquitoes, which have caused all of the tenants on plaintiff's said lands to become and to remain ill with malaria, chills, and fever, creating thereby health conditions which render plaintiff's said lands unfit for residential purposes and greatly depreciating and destroying the value of said lands.

"4. That by erecting and closing said dam, and creating the said lake or pond of water as aforesaid, the defendant has obstructed the natural flow of the waters and flood waters of the Wateree River, and the creeks, ditches and drains which empty or discharge into said river, filling the same with sand and debris, and greatly lessening the capacity of said creeks and ditches for drainage purposes through and over plaintiff's said lands.

"5. That in constructing and closing said dam, defendant, although knowing said action by it would result in possible great injury to the lands of plaintiff in proximity to the lake which it was about to form, negligently, carelessly and with willful and reckless disregard of the rights of others, and the property of the plaintiff, and of the requirements of the law with reference thereto, without notice to the plaintiff and without his consent, closed said dam and flooded said large area without having said area which was to be submerged cleaned and cleared of trees, vines, shrubs and grasses, and other vegetable matter, by cutting or burning the same.

"6. That the act of the defendant in so closing and building and maintaining said dam, and thereby raising the waters in the channel of said river, and the streams, creeks, ditches, drains and hollows emptying into and lying about it, particularly the branches, creeks and ditches on and through plaintiff's said lands, and throwing the waters and same back in, on and upon plaintiff's said bottoms sobbing the same, and the pooling of the stagnant waters as aforesaid, was and is an illegal trespass upon the lands of the plaintiff, to his damage in the sum of $2,000.00."

The defendant denied the material allegations of the complaint, and set up the following defense:

"That the defendant was duly authorized and empowered to construct and maintain the dam, pond of water and hydro-electric plant complained of in the complaint of the plaintiff, by an Act of the Legislature of South Carolina, entitled 'An Act to incorporate the Wateree Power Company,' approved February 26, 1909, and found in Volume 25, p. 400, of the Statutes of South Carolina; that said dam, pond of water and other structures connected therewith were constructed and have since been maintained by the defendant in strict accordance with the terms and conditions of said Act, and this defendant expressly pleads said Act in bar of the plaintiff's right to maintain this action."

21—S. C.—123

At the close of the testimony, the defendant made a motion for the direction of a verdict on the following grounds:

"(1) That there is no evidence in the case tending to show actionable negligence or trespass or any other cause of action against the defendant.

"(2) That the only reasonable inference that can be drawn from the testimony is that the plaintiff has failed to sustain the allegations of the complaint, and that no cause of action has been proven to exist against the defendant.

"(3) That there is no evidence in the case to warrant punitive damages."

The motion was refused.

Plaintiff's attorneys withdrew the claim for punitive damages.

The jury rendered a verdict in favor of the plaintiff for $1,000.00, and the defendant appealed.

There was testimony tending to sustain the allegations of the complaint; and the practical question in the case is whether the Act incorporating the defendant (1909, p. 400) authorized it to commit the acts of wrong alleged in the complaint.

The purposes for which the defendant was chartered are as follows:

"For manufacturing, generating, buying, selling, leasing, letting, accumulating, transmitting or distributing any and all types of electric current for light, heat, power and for any other uses and purposes to which the same may be adapted."

Section 3 of said Act is as follows:

"Said corporation shall have the right and power to condemn any and all lands, property, water, riparian or other rights, or easements, or any interest therein, necessary to the construction, erection, operation and maintenance of its power plants and dams. Such property, lands, water, riparian or other rights, and easements shall be condemned in the same manner and the methods of compensation to be

the same as in the case of condemnations by railways, canal, and turnpike companies, provided by the laws of this State."

Section 6 of the Act contains this provision:

"That the right of condemnation shall not be exercised until seven-elevenths of the water rights and easements necessary for the development of any water power provided for in this Act shall have been acquired by purchase from the owner thereof."

In the first place, it will be observed that the provision as to condemnation proceedings is mandatory; and, in the second place, that the defendant was without authority to condemn any lands, property, water, riparian or other rights, or easements, or any interest therein, except such as were necessary to the construction, erection, operation, and maintenance of its power plants and dams. If the damage was not preventable by the use, at reasonable expense, of proper devices, then the plaintiff's property must be regarded as necessary for the purposes contemplated by the defendant's character, and could be acquired by purchase or condemnation proceedings; and, pending its acquisition, the defendant would be responsible.

When the defendant failed to comply with the mandatory provisions of the Act as to condemnation proceedings, the plaintiff had the right to bring an action for damages against it as a trespasser.

In *Tompkins v. R. R.,* 37 S. C., 382, 16 S. E., 149, the rule is thus stated:

"As we understand it, under the law as it now stands, a corporation has no right, for the purpose of constructing a railroad to enter upon the land of another (except for the purpose of survey and location), until it has obtained the consent of the owner, or, in case of refusal of consent, until it has taken the proceedings provided for by statute to ascertain what would be just compensation to the owner of the land, and any entry for the purpose of constructing its railroad, before such consent has been obtained, or be-

fore the proper proceedings to ascertain what would be just compensation to the owner, is unlawful, and subjects the corporation to liability to be proceeded against as a trespasser. The two remedies are entirely distinct and separate, and the one is not dependent upon the other."

In the case of *Richards v. Terminal Co.,* 233 U. S., 546; 34 Sup. Ct., 654; 58 L. Ed., 1088; L. R. A. 1915A, 887, the Court thus ruled: That the Fifth Amendment to the Constitution of the United States, which provides that private property shall not be taken for public use without just compensation, prohibits Congress from conferring immunity from suit for private nuisance, of such a character as to amount, in effect, to a taking of property for a public use, although it may legalize what otherwise would be a public nuisance.

That said constitutional provision does not require that the owner of noncontiguous property, no part of which was actually appropriated, but which lies in the neighborhood of a railroad tunnel, constructed or maintained upon property by purchase or condemnation proceedings, be compensated for the damage through the smoke, cinders, gases, dust, and dirt, and vibrations incident to the prudent operation of the railroad.

That an owner of property in the neighborhood of, but not abutting upon, the railroad tracks and tunnel, constructed and maintained under certain Acts of Congress, is entitled, under said constitutional amendment, to be compensated for damages attributable to gases and smoke from locomotives while in the tunnel, and by means of a fanning system, forced out of such tunnel, in such manner as naturally to render such property less habitable than otherwise it would be, and to depreciate it in value.

In that case the Court used the following language:

"The Acts of Congress referred to, followed by the construction of the tunnel and railroad tracks substantially in the mode prescribed, had the effect of legalizing the con-

struction and operation of the railroad, so that its operation
while properly conducted and regulated, cannot be deemed
to be a public nuisance.    Yet it is sufficiently obvious that
the acts done by defendant, if done without legislative sanc-
tion, would form the subject of an action by plaintiff to re-
cover damages as for a private nuisance.    *    *    *    The
legislation we are dealing with must be construed in the
light of the provision of the Fifth Amendment—'Nor shall
private property be taken for public use without just com-
pensation'—and is not to be given an effect inconsistent with
its letter or spirit.    *    *    *

"The present case in the single particular already alluded
to—that is to say, with respect to so much of the damage
as is attributable to the gases and smoke emitted from loco-
motive engines while in the tunnel, and forced out of it by
the fanning system therein installed, and issuing from the
portal located near to plaintiff's property, in such manner
as to materially contribute to render his property less hab-
itable than otherwise it would be, and to depreciate it in
value; and this without, so far as appears, any real neces-
sity existing for such damage—is, in our opinion, within
the reason and authority of the decision just cited. * * *
The case shows that Congress has authorized, and, in effect,
commanded, defendant to construct its tunnel with a
portal located in the midst of an inhabited portion of the
city.    The authority, no doubt, includes the use of steam
locomotive engines in the tunnel, with the inevitable com-
comitants of foul gases and smoke emitted from the engines.
No question is made but that it includes the installation and
operation of a fanning system for ridding the tunnel of this
source of discomfort to those operating the trains and trav-
eling upon them.    All this being granted, the special and pe-
culiar damage to the plaintiff as a property owner in close
proximity to the portal is the necessary consequence, unless
at least it be feasible to install ventilating shafts or other de-
vices for preventing the outpouring of gases and smoke,

from the entire length of the tunnel at a single point from the surface, as at present. Construing the Acts of Congress in the light of the Fifth Amendment, they do not authorize the imposition of so direct and peculiar and substantial a burden upon plaintiff's property without compensation to him. If the damage is not preventable by the employment at reasonable expense of devices such as have been suggested, then plaintiff's property is 'necessary for the purposes contemplated,' and may be acquired by purchase or condemnation, * * * and pending its acquisition defendant is responsible. If the damage is readily preventable, the statute furnishes no excuse; and the defendant's responsibility follows on general principles.

"No doubt there will be some practical difficulty in distinguishing between that part of the damage which is attributable to the gases and smoke emitted from the locomotive engines while operated upon the railroad tracks adjacent to plaintiff's land, and with respect to which we held there is no right of action, and damage that arises from the gases and smoke that issue from the tunnel, and with respect to which there appears to be a right of action. How this difficulty is to be solved in order to determine the damages that should be assessed in this action, or the compensation that should be awarded in case condemnation proceedings are resorted to, is a question not presented by this record, and upon which, therefore, no opinion is expressed."

The opinon from which we have just quoted is exceedingly able, and may, indeed, be regarded as a leading opinion touching the questions therein decided.

Mr. Justice Pitney, who delivered the opinion of the Court, clearly points out the distinction between the liability for damages caused by the construction and maintenance of railroad tracks (which are in their nature inactive and passive) and the liability resulting from the operation of the engines and cars that run over the tracks. The right to damages resulting from injury by reason of the con-

struction and maintenance of the tracks is to be determined under the provision of the Constitution that private property shall not be taken for public use without compensation.

Liability under this provision of the Constitution is not dependent upon the question of negligence. On the other hand, when the action is for damages arising out of the operation of the engines and cars, proof of negligence is indispensable. The cases of *Woods v. Fertilizer Co.*, 102 S. C., 442; 86 S. E., 817; Ann. Cas. 1917D, 1149, and *Free v. Parr Shoals*, 111 S. C., 192; 97 S. E., 243, show that the nuisance alleged in the complaint was private and not public in its nature. Applying these principles to the present case, the question is whether acts of the defendant alleged in the complaint amount, in effect, to a taking of property without just compensation, which, as we have stated, does not depend upon negligence.

In *Haig v. Wateree Power Co.*, 112 S. E., 55, which was recently decided by this Court, the rule is thus stated:

"Possession is not the only element of value in the land. The right to sell, the right to rent, the right to improve, the right to sow and to reap, are all valuable rights which are affected by a verdict in a condemnation proceeding. Mr. Lewis, in his writings on Eminent Domain (3d Ed.), Vol. 1, § 65, says:

" 'If property, then, consist, not in tangible things themselves, but in certain rights in and appurtenant to those it follows that when a person is deprived of any of those rights he is to that extent deprived of his property, and hence that his property may be taken, in the constitutional sense, though his title and possession remain undisturbed; and it may be laid down as a general proposition, based upon the nature of the property itself, that whenever the lawful rights of an individual to the possession, use, and enjoyment of his land are in any degree *abridged* or *destroyed* by reason of the exercise of the power of eminent domain, his property is

*pro tanto taken* and he is entitled to compensation.' " (Italics· added.).

The enumeration of the property in Section 3 of the incorporating Acts is sufficiently comprehensive to include the plaintiff's property, which the complaint alleges was taken by the defendant, and for which the plaintiff brings this action, practically for compensation.

The words used by the Court in *Haig v. Wateree Power Co., supra,* and the quotation from *Lewis on Eminent Domain,* show conclusively that whatever the prevailing rule may heretofore have been, it does not now require that there should be a physical appropriation of the ·owner's property in order to constitute such a "taking"· as to entitle him to compensation.

The testimony sustains the allegations of the complaint, and the plaintiff was entitled to recover a verdict, unless there was error in the ruling of his Honor, the presiding Judge, that it was not necessary for the plaintiff to prove negligence on the part of the defendant. If the Circuit Judge had charged that the plaintiff ˙was not entitled to compensation, unless there was proof of negligence, such a ruling would have been in violation of Section 17, Article 1, of the Constitution, which provides that private property shall not be taken for public use without just compensation being first made therefor. Such a ruling would, in effect, have added a new condition to that provision of the Constitution ˙just quoted.

As this action has been treated throughout the trial practically as a proceeding for compensation, and in order to remove all doubt as to the right of the plaintiff to· recover damages under condemnation proceedings, we deem it advisable under the authority of *Auten v. Catawba Co.,* 84 S. ·C., 399; 65 S. E., 274; 66 S. E., 180, to grant a new trial unless within twenty days the plaintiff or his attorneys shall¹ consent upon the record that the verdict by the jury shall be in satisfaction of all damages, both past and future, but that,

if the plaintiff complies with this condition, the judgment should be affirmed, and it should be so adjudged.

Messrs. Justices Watts and Fraser, and Circuit Judges Wilson, Bowman and Mauldin, concur.