JORDAN v. LUIPPOLD et al.

No. 29704.   April 29, 1941.

Rehearing Denied July 1, 1941.

*114 P. 2d 917.*

Guy L. Andrews, of McAlester, for plaintiff in error.

W. A. Lackey and W. J. Arnote, both of McAlester, for defendants in error.

CORN, V. C. J. J. H. Luippold and others brought an action in the district court of Pittsburg county against S. N. Jordan to abate a nuisance and for a temporary restraining order restraining and enjoining the defendant from constructing additional improvements in connection with his junk yard in McAlester pending final disposition of the case. The restraining order was granted, and upon trial of the case judgment was rendered declaring the defendant's junk business at its present location a nuisance and abating the same by a permanent injunction. From said judgment of the court the defendant brought this appeal. The parties are referred to herein as plaintiffs and defendant, as they appeared in the trial court.

The evidence shows that a strip of ground between Choctaw avenue and the Rock Island railroad tracks is used by the defendant as a junk yard upon which is piled and strewn junk of every kind and description, the defendant conducting at said location what is known as a junk or salvage business. Photographs admitted in evidence show at one end of the yard a large shed constructed of scrap materials and a small shack occupied by the yard keeper as living quarters, and the remainder of the yard, which is between four and five hundred feet long, is well covered with scrap iron and other junk. The record further shows that on the opposite side of Choctaw avenue from the junk yard is a residential district consisting of substantial and expensive residences and well-kept premises. The complainants are residents and property owners in this vicinity. It is alleged in plaintiffs' petition, and the testimony of numerous witnesses shows, that the junk yard was not properly drained and that water stood in pools after rains, and that water collected in old automobile casings and other receptacles in the junk heaps and became stagnant and a breeding place for mosquitoes; that at different times the defendant purchased bones for shipment and piled them in the junk yard, some of them being green and giving off noxious odors, and that dogs carried some of these bones away and in some instances left them upon the lawns and about the premises of the plaintiffs; that the junk yard was also a breeding place for rats and green flies, that it was kept in an unsanitary condition and was a hazard to the health of the community; that plaintiffs were often disturbed by the noise attending the unloading of the scrap iron and the loading of same on cars for shipment, and that such disturbance sometimes occurred at night; that the place was frequented to a certain extent by an undesirable class of people, thus causing the residents of the community to feel less secure in their persons and their property; that in addition to the foregoing, the place was unsightly and was a blow to civic pride; that property values had depreciated 25 to 50 per cent and that rental values had declined and that it was difficult to keep the properties rented on account of the conditions created by the junk yard. Many of the witnesses who testified at the trial had lived in this neighborhood, but had moved away to more desirable locations. The defendant sought to show that the conditions were not such as to constitute a nuisance, but at best the testimony produced by him was not complimentary to the establishment maintained by him at this location.

None of the authorities cited by either party involve junk yards, but we find that the principles discussed therein are applicable to junk yards as well as to the facts of the cases cited. In Jordan et al. v. Nesmith et al., 132 Okla. 226, 269 P. 1096, this court affirmed the judgment of the trial court enjoining 'the establishment of a funeral home in a residential district. The opinion in said case discusses the conditions which render a lawful and useful business or instrumentality a nuisance under the circumstances of the case, as distinguished from a nuisance per se. Paragraphs 2 and 3 of the syllabus are applicable to all such cases where a nuisance is determined from the circum-

stances of the particular case, and they are as follows:

"Where the evidence shows that a lawful business is being conducted in such a manner as to constitute a private and public nuisance, causing substantial injury to the comfort, health, or property of adjoining property owners, a court is authorized in enjoining and abating such nuisance. And where it clearly appears that such business cannot be conducted in any manner at the place where situated without constituting a substantial injury to the adjoining property owners, the injunction should absolutely prohibit the operation of such business in that location.

"When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business, in such locality, becomes a nuisance and may be enjoined."

The rule is stated in the case of Kenyon v. Edmundson, Adm'r, 80 Okla. 3, 193 P. 740, in paragraph 4 of the syllabus, as follows:

"Where the facts show that a lawful business is being conducted in such a manner as to constitute a private and public nuisance, causing substantial injury to comfort, health, or property, a court is authorized in enjoining and abating such nuisance. The injunction ordinarily should be limited, not to the business itself, but to the usage that creates the nuisance, leaving the right to carry on the business in a proper and lawful manner; but where it clearly appears that such business cannot be conducted in any manner at the place where situated without constituting a substantial injury to adjoining property owners, the injunction should absolutely prohibit the operation of such business."

Under the evidence in the record, the finding of the trial court, that the junk yard at the location described in plaintiffs' petition is both a public and private nuisance, is not clearly against the weight of the evidence, and it was not error for said court to perpetually enjoin the operation of said business at said location.

The judgment is affirmed.

WELCH, C. J., and OSBORN, GIBSON, and DAVISON, JJ., concur.