17862

R. L. BOWLIN, Respondent, v. Corinne B. GEORGE and Douglas B. Cox, doing business as Bud's Auto Wrecking Company, of whom the defendant, Douglas B. Cox, doing business as Bud's Auto Wrecking Company is, Appellant.

(123 S. E. (2d) 528)

*Messrs. Williams & Henry* and *W. E. Bowen,* of Greenville, *for Appellant,*

430

Messrs. *J. G. Leatherwood* and *Pyle & Pyle,* of Green-ville, *for Respondent,*

Messrs. *Williams & Henry* and *W. E. Bowen,* of Green-ville, *for Appellant, in Reply,*

January 10, 1962.

OXNER, Justice.

This is an action to recover damages alleged to have re-sulted to plaintiff from a nuisance (a motor vehicle junk yard) and to enjoin the continuance thereof. The defendants demurred to the complaint upon the ground that it fails to state facts sufficient to constitute a cause of action. From an order sustaining the demurrer as to defendant Corinne B. George and overruling it as to the defendant Douglas B.

Cox, doing business as Bud's Auto Wrecking Company, the last named defendant has appealed.

Plaintiff alleges that he is the owner of a 14 acre tract of land near the City of Greenville upon which many years ago he erected a home where he and his family now reside; that many other residences have since been built in this vicinity; that his property is ideally situated for the development of a residential subdivision; that defendant Mrs. George is the owner of a 4.2 acre tract of land adjoining his property which she leased to defendant Cox who, "with the full knowledge, consent and acquiescence" of the Lessor, has established and since maintained an enormous and extensive automobile junk yard thereon, doing business under the name and style of Bud's Auto Wrecking Company; that said junk yard has been in operation for approximately a year; that there are now on said premises "hundreds of old wrecked automobiles and parts of several hundred other automobiles", which "provide for an accumulation of water in old automobile casings and other receptacles in said junk yard, which water becomes stagnant and a breeding place for mosquitoes, and by the maintenance of said junk yard, said defendant, Douglas B. Cox, has permitted a considerable growth of weeds on said premises, in, under and about said junked automobiles and parts where mosquitoes harbor and flourish and where rubbish is concealed."

It is then alleged: "That said junk yard adjoins plaintiff's property and is in close proximity to his home where he and his wife live; that subsequent to the establishment of said junk yard, the plaintiff and his wife have been made to endure much discomfort and inconvenience by reason of their home becoming infested with mosquitoes which, as plaintiff is informed and believes, were bred on the premises occupied by the defendant, Douglas B. Cox, thereby causing plaintiff and his wife much annoyance and forcing plaintiff and his wife to remain indoors and preventing them from enjoying their property and the simple pleasures of life to which they are entitled."

Finally, it is alleged that said junk yard constitutes a nuisance as a result of which "the comfort of the plaintiff and his wife and their health and welfare have been greatly impaired and the value of plaintiff's property has been greatly depreciated, all to his great damage in the sum of $50,000.00."

While the business of wrecking automobiles and salvaging the parts is a legitimate one and not a nuisance *per se,* it may become a nuisance *per accidens* by reason of its improper location or the manner in which it is conducted. *Parkersburg Builders Material Co. v. Barrack,* 118 W. Va. 608, 191 S. E. 368, 192 S. E. 291, 110 A. L. R. 1454; *Kubby v. Hammond,* 68 Ariz. 17, 198 P. (2d) 134; Annotation 110 A. L. R. 1461; 39 Am. Jur., Nuisances, Section 70. The same is true as to the business of operating an automobile sales lot. Annotation 56 A. L. R. (2d) 776. This is but an application of the following general principle stated by Blackstone, and quoted with approval in *Frost v. Berkeley Phosphate Co.,* 42 S. C. 402, 20 S. E. 280, 283, 26 L. R. A. 693: "If one does any other act in itself lawful, which yet, being done in that place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent upon him to find some other place to do that act, where it will be less offensive." Or. as stated in *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303: "A nuisance may be merely a right thing in the wrong place, like a pig in the parlor instead of the barnyard."

In *Jordan v. Luippold,* 189 Okl. 189, 114 P. (2d) 917, it was held that evidence that a junk yard in a residential section was kept in such condition as to be a breeding place for mosquitoes, rats and green flies, that bones in the junk yard gave off noxious odors, and that adjacent owners were often disturbed by noise attending loading and unloading of scrap iron, justified a finding of a public and private nuisance. There was testimony in that case, as alleged in this case, that water collected in old automobile casings and

other receptacles became stagnant and a breeding place for mosquitoes. In *Yaffe v. City of Ft. Smith,* 178 Ark. 406, 10 S. W. (2d) 886, the Court held that the finding of a nuisance was justified where the keeper of a junk pile in a city allowed cans and containers forming a part of it to collect water so as to become a breeding place for mosquitoes, to the injury of the health and comfort of persons connected with nearby businesses.

Giving the complaint in the instant case a liberal construction, as must be done in passing on the demurrer, we think under the above authorities that the facts stated are sufficient to justify a finding that the maintenance of this motor vehicle junk yard constitutes a nuisance *per accidens.* Respondent disclaims any intention of stating a cause of action based on a nuisance *per se.*

We find some difficulty in determining exactly in what particulars appellant claims that the complaint does not state a cause of action. The first position taken by him is stated thus: "The complaint does not allege a cause of action for a nuisance *per accidens* in that the alleged accumulation of surface water cannot constitute a cause of action for a nuisance *per accidens.*" It is argued that if appellant has created any nuisance at all, it is a nuisance *per se* resulting from the accumulation of surface water, and, therefore, respondent cannot maintain an action, as he seeks to do, based on a nuisance *per accidens.* But this case does not involve the obstruction of the flow of surface water or the right of an owner to deal with it, and we fail to see how the law relating to the handling of surface water has any application.

Appellant's next position is stated in his brief as follows: "The complaint does not allege a cause of action for a nuisance *per se,* because Respondent does not allege damages which are particular, special or peculiar to him, and different in kind and degree from those which the general public sustains." Apparently it is sought here to invoke the general rule that an individual can neither abate, nor recover damages for, a public nuisance, unless he

can show that he has sustained therefrom damage of a special character, distinct and different from the injuries suffered by the public generally. The courts sometimes encounter difficulty in determining what is a special injury within the rule. In *Brown v. Hendricks,* 211 S. C. 395, 45 S. E. (2d) 603, there was quoted with approval the following from *Wesson v. Washburn Iron Co.,* 13 Allen, Mass. 95, 103, 90 Am. Dec. 181:

" The real distinction would seem to be this; that when the wrongful act is of itself a disturbance or obstruction only to the exercise of a common and public right, the sole remedy is by public prosecution, unless special damage is caused to individuals. In such case the act of itself does no wrong to individuals distinct from that done to the whole community. But when the alleged nuisance would constitute a private wrong by injuring property or health, or creating personal inconvenience and annoyance, for which an action might be maintained in favor of a person injured, it is none the less actionable because the wrong is committed in a manner and under circumstances which would render the guilty party liable to indictment for a common nuisance. This we think is substantially the conclusion to be derived from a careful examination of the adjudged cases. The apparent conflict between them can be reconciled on the ground that an injury to private property, or to the health and comfort of an individual, is in its nature special and peculiar, and does not cause a damage which can properly be said to be common or public, however numerous may be the cases of similar damage arising from the same cause."

It was held in *Woods v. Rock Hill Fertilizer Company,* 102 S. C. 442, 86 S. E. 817, that the rule requiring allegation and proof of special injury does not apply "when a plaintiff states, as his cause of action, that which is *prima facie* only a private nuisance, even though it may appear from his complaint that a determinate number of other persons are or may be similarly affected by it, for a nuisance may affect a considerable number of persons in the same

manner and yet not be a public nuisance, and, in that event, if the individuals so affected were denied the private remedy of an action, they would be without any remedy at all, because, if it is not a public nuisance, it is not subject to indictment."

As previously pointed out, the business of maintaining and operating an automobile junk yard is not a nuisance *per se*. Whether the junk yard in question is or may become a public nuisance need not be decided, for under the allegations of the complaint it is as to respondent a private nuisance. He is not complaining of the violation of a right of a public nature or one held in common with the rest of the public. He alleges the invasion of a private right, namely, the interference with the reasonable enjoyment of his property and the depreciation in its value. We think it is quite clear that he is entitled to maintain this action.

*Woods v. Rock Hill Fertilizer Company, supra,* is conclusive of the question under discussion. There the complaint was that disagreeable odors and dust from a nearby fertilizer plant deprived the plaintiff of the comfort and enjoyment of her home and depreciated the value of her property. She sought both damages and injunctive relief. The defendant contended that if the operation of the fertilizer plant constituted a nuisance, it was a public nuisance and, therefore, the complaint was insufficient because there was no allegation that plaintiff suffered any special or particular injury, differing in kind from that suffered by the public. The Court held that the facts showed that as to the plaintiff it was a private nuisance for which she had a private remedy. The following language of the Court applies here:

"Now, clearly, a fertilizer mixing plant is not a 'nuisance *per se*,' that is, a thing which is a nuisance anywhere and under all circumstances. If it is a nuisance at all, it is what is called a 'nuisance *per accidens*', that is, by reason of its location and other circumstances, such as the community in which it is located, or the manner in which it is constructed

or conducted. It follows that plaintiff's cause of action is based upon that which is *prima facie* only a private nuisance, and, therefore, it was not necessary to the sufficiency of her complaint that she should have alleged injury to herself differing in kind from that suffered by others who may have been affected. The complaint will be searched in vain for any allegations of fact which show that the things complained of amount to a public nuisance. The demurrer was therefore properly overruled."

Other decisions of this Court sustaining the above conclusion are reviewed in the well considered opinion of Judge Parker in *Sullivan v. American Manufacturing Co.*, 4 Cir., 33 F. (2d) 690.

*Baltzeger v. Carolina-Midland Railway Co.*, 54 S. C. 242, 32 S. E. 358, and *Belton v. Wateree Power Co.*, 123 S. C. 291, 115 S. E. 587, the two cases principally relied on by appellant, are distinguishable. In the *Baltzeger case* the alleged nuisance was created within a municipality by damming up surface water. The Court held that any nuisance created thereby was public in nature and not a private nuisance. The *Belton case* involved the right to recover consequential damages resulting from the damming of a stream under legislative authority, a situation entirely different from that presented in the instant case.

The third and last position taken by appellant is that "the alleged damages are not 'direct' but 'consequential'." We find no merit in this contention. The damages complained of flow directly from the alleged improper maintenance and operation of this junk yard.

We have not considered Exception IX. It is not referred to in appellant's brief and presumably has been abandoned.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BUSSEY, JJ., concur.