753 S.E.2d 846

**CARNIVAL CORPORATION, d/b/a Carnival Cruise Lines; South Carolina State Ports Authority; and City of Charleston, Defendants,**

v.

**HISTORIC ANSONBOROUGH NEIGHBORHOOD ASSOCIATION, Charlestowne Neighborhood Association, the Coastal Conservation League, and Preservation Society of Charleston, Plaintiffs.**

**Appellate Case No. 2011–197486.**

**No. 27355.**

Supreme Court of South Carolina.

Heard Nov. 19, 2013.
Decided Jan. 22, 2014.

68

70

Marvin D. Infinger, of Nexsen Pruet, LLC, and Philip L. Lawrence, of South Carolina Ports Authority, both of Charleston, for Petitioner South Carolina State Ports Authority.

Gordon D. Schreck and David M. Collins, of Womble, Carlyle, Sandridge, & Rice, PLLC, of Charleston, for Petitioner Carnival Corporation.

Corporation Counsel Frances I. Cantwell, all of Charleston, for Petitioner City of Charleston.

J. Blanding Holman, IV, of the Southern Environmental Law Center, of Charleston, for Respondents Historic Ansonborough Neighborhood Association, Charlestowne Neighborhood Association, and Coastal Conservation League.

Timothy C. Dargan, of Brown & Varnado, LLC, of Mt. Pleasant, for Respondent Historic Ansonborough Neighborhood Association.

John A. Massalon, of Wills Massalon & Allen, LLC, of Charleston, for Respondent Preservation Society of Charleston.

John C. Moylan, III, of Wyche, P.A., of Columbia, and Associate General Counsel William J. Cook, of Washington, D.C., for Amicus Curiae National Trust for Historic Preservation.

## JUDGMENT FOR PETITIONERS

Justice HEARN.

In this case brought in our original jurisdiction, several citizens groups filed suit against a cruise ship operator alleging nuisance and zoning claims and seeking an injunction. We hold these groups lack standing and dismiss.

## FACTUAL/PROCEDURAL BACKGROUND

The plaintiffs in this case consist of four Charleston citizens' groups: the Historic Ansonborough Neighborhood Association (Ansonborough Association), the Charlestowne Neighborhood Association (Charlestowne Association), the Coastal Conservation League (League), and the Preservation Society of Charleston (Preservation Society) (collectively Plaintiffs). The Ansonborough Association is a nonprofit corporation composed of residents, property owners, and tenants of the Ansonborough neighborhood which is concerned with compliance with land use laws and threats to the quality of life in the area. Similarly, the Charlestowne Association is a nonprofit that seeks to protect the quality of life for residents of the Charlestowne neighborhood. Both the Ansonborough Association and the Charlestowne Association are located in the Old and Historic District near the Union Pier Terminal (the Terminal) in Charleston. The League is a nonprofit corporation with a mission of conserving natural resources and protecting the quality of life in South Carolina. The Preservation Society is a nonprofit corporation headquartered in Charleston which seeks to protect the historic, architectural, and cultural character of Charleston.

Plaintiffs brought suit seeking an injunction against what they believe to be the unlawful use of the Terminal by the Carnival Corporation's cruise ship, the *Fantasy*. Plaintiffs' complaint named Carnival as the sole defendant, but the South Carolina State Ports Authority, which owns and operates the Terminal, and the City of Charleston were later permitted to intervene as defendants (collectively Defendants).

Plaintiffs' first amended complaint alleges the Terminal is used as the *Fantasy*'s home port where crew, passengers, and supplies load and unload for each voyage. The *Fantasy* is 855 feet long and more than 60 feet tall from the water line and can carry up to 2,056 passengers and 829 crewmembers. Since 2010, the Ports Authority has contracted with Carnival for the use of the Terminal as the *Fantasy*'s home port. The Terminal is within the City's Old and Historic District which is listed on the National Register of Historic Places maintained by the United States Department of the Interior.

Plaintiffs allege the *Fantasy*'s operations at the Terminal harm the Old and Historic District and them in a number of ways. They allege the *Fantasy* can be seen above the historic buildings of Charleston and that it disrupts the historic skyline. The thousands of passengers and crew allegedly cause major traffic congestion in the area as well as the closure of public roads. The *Fantasy* allegedly emits noise pollution through music and broadcast announcements and air pollution through particulates produced by its diesel engines. Plaintiffs contend expanded cruise ship operations may jeopardize the Old and Historic District's listing on the National Register of Historic Places.

Plaintiffs' complaint seeks injunctive relief based on ten claims: seven based on City ordinances, a public nuisance claim, a private nuisance claim, and a claim based on the South Carolina Pollution Control Act. The ordinance claims assert the *Fantasy*'s use of the Terminal violates the City's zoning code because it is not a permissible use within the light industrial zone applicable to the Terminal, it is an accommodations use in an area not zoned for accommodations uses, it is a tour boat use in an area not within a tour boat overlay zone, the *Fantasy* exceeds the applicable height ordinance, and the ship blocks views of the Cooper River in violation of the applicable view corridor provisions. The complaint also alleges Carnival violates the City's sign ordinance because the *Fantasy*'s smokestack is a sign and violates the City's noise ordinance because the *Fantasy* makes announcements over amplified sound systems.

Defendants initially filed motions to dismiss pursuant to Rule 12(b)(6), SCRCP, contending Plaintiffs' complaint fails to state a claim for relief because Plaintiffs lack standing, as a matter of law the ordinances do not apply to cruise ship operations at the Terminal, and to the extent the ordinances apply they are preempted by federal and state law. Before the circuit court could rule on the motions to dismiss, Defendants petitioned this Court to take the case in its original jurisdiction. The Court granted the petition, transferred the case to this Court, and appointed the Honorable Clifton B. Newman, Circuit Court Judge, as special referee to conduct a hearing and make recommendations on the motions to dismiss.

Following a hearing, Judge Newman issued a report recommending the Court grant the motions to dismiss as to all of the ordinance claims and the Pollution Control Act claim, but deny the motion as to the two nuisance claims. Generally, the report found that as a matter of law none of the ordinances apply to the *Fantasy*'s use of the Terminal, the Pollution Control Act does not govern the *Fantasy*'s discharges in South Carolina waters, and the complaint makes sufficient allegations to set forth both a private and a public nuisance cause of action. The report did not consider the issues of standing and preemption. Plaintiffs and Defendants filed exceptions to the report. After considering the report and the exceptions, this Court dismissed the noise ordinance, sign ordinance, and Pollution Control Act claims. This Court withheld ruling on the motions to dismiss on the five zoning and two nuisance claims and ordered the parties to brief the issues of standing, preemption, and whether the zoning ordinances apply to the *Fantasy*'s use of the Terminal.

## ISSUES PRESENTED

I. Whether Plaintiffs possess standing to assert their claims?

II. Whether the zoning ordinances apply to the *Fantasy*'s use of the Terminal?

III. If the zoning ordinances are applicable to the *Fantasy*'s use of the Terminal, whether the zoning ordinances are preempted by federal or state law?

IV. Whether Plaintiffs' public nuisance claim should be dismissed for failing to state facts sufficient to constitute a cause of action?

V. Whether Plaintiffs' private nuisance claim should be dismissed for failing to state facts sufficient to constitute a cause of action?

## STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant may move to dismiss a complaint due to its "failure to state facts sufficient to constitute a cause of action." In considering a motion to dismiss under Rule 12(b)(6), a court must base its ruling solely on the allegations set forth in the complaint. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007). If the facts

alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, dismissal under Rule 12(b)(6) is improper. *Id.*

## LAW/ANALYSIS

■ Defendants move to dismiss Plaintiffs' complaint in its entirety on the ground Plaintiffs lack standing to bring any of the claims contained therein. We agree.

■ For a plaintiff to possess standing three elements must be satisfied. First, the plaintiff must have suffered an injury-in-fact which is a concrete, particularized, and actual or imminent invasion of a legally protected interest. *Sea Pines Ass'n for the Prot. of Wildlife v. S.C. Dep't of Natural Res.*, 345 S.C. 594, 600–01, 550 S.E.2d 287, 291–92 (2001). Second, a causal connection must exist between the injury and the challenged conduct. *Id.* Third, it must be likely that a favorable decision will redress the injury. *Id.*

Here, Defendants focus on the first, injury-in-fact element of standing, asserting Plaintiffs allege only generalized grievances suffered by the public as a whole and fail to allege any particularized harm. Reviewing Plaintiffs' complaint, we conclude Plaintiffs fail to allege a concrete, particularized harm to a legally protected interest and therefore hold Plaintiffs lack standing.

■ In order for an injury to be particularized, it must affect the plaintiff in a personal and individual way. *Id.* at 602, 550 S.E.2d at 292; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). While arising from the different context of a challenge to government action, in *Lujan* the United States Supreme Court distinguished generalized injuries from those injuries sufficiently particularized as to create standing, writing: "[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not" possess standing. *Lujan*, 504 U.S. at 573–74, 112 S.Ct. 2130.

■ Additionally, a plaintiff that is an association, such as Plaintiffs here, may possess standing by virtue of associational

standing on behalf of its members. An organization has associational standing "if one or more of its members will suffer an individual injury by virtue of the contested act." *Sea Pines*, 345 S.C. at 600–01, 550 S.E.2d at 291. The three part test for associational standing requires that an association's members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000), *see also Beaufort Realty Co. v. Beaufort Cnty.,* 346 S.C. 298, 301, 551 S.E.2d 588, 589 (Ct.App.2001) (applying that test). Accordingly, to possess standing, either Plaintiffs alone must have suffered a concrete, particularized injury or their members must have suffered such an injury and the other elements of associational standing must be satisfied.

Here, Plaintiffs fail to allege a particularized injury either to themselves or their members. Rather, they assert only generalized grievances suffered by the public as a whole which are insufficient to establish standing. Specifically, Plaintiffs' allegations of harm relevant to the remaining claims consist of the following:

- "The crowds, pollution, and traffic associated with these unlawful operations create a nuisance for Charleston citizens. This lawsuit aims to protect Charleston's neighborhoods, families and the environment by having Defendant Carnival play by the longstanding rules and norms that have made—and make—Charleston a wonderful place to work, live, and visit."

- "[T]he *Fantasy* visually disrupts the historic skyline."

- "The influx of thousands of passengers, crew, and support personnel (and associated traffic) . . . cause major traffic congestion downtown and the closure of public roads."

- "The vessels emit noise pollution, including broadcast announcements and music, and the burning of diesel fuel emits visible particulate soot from ship funnels—all adjacent to the Old and Historic District."

- "Home-porting cruise operations at an industrial scale could jeopardize the integrity, setting, and context that led to National Register designation and place maintenance of National Register status at risk."

- "On *Fantasy* embarkation and debarkation days, portions of Concord and Washington Streets—which are public streets—are closed for cruise business. Because of those closures, displacement of traffic, and the concentration of cruise traffic in a limited area for a limited time, cruise embarkations and debarkations cause increased congestion along the east side of the downtown Peninsula."

- "Cruise ships such as the Defendant's *Fantasy* also emit visible particulate soot and other pollutants, including nitrogen and sulfur oxides, which are harmful to human health when inhaled and are deposited into the surrounding waters and land."

- "Defendant's actions including noncompliance with zoning and environmental laws have injured the above Plaintiff organizations and their members by among other things reducing their use and enjoyment of the local environment and Charleston's historic assets, including their homes, neighborhoods and protected structures."

- "Cruise operations downtown and ineffective management of them cause, among other things, traffic congestion, pollution emissions, road closures, large crowds, loud noises, and obstructed views that are incompatible with the area's historic setting, scale, and residential character and impact health and the environment."

Lacking from these allegations is any claim that Plaintiffs themselves or their members have suffered a particularized harm. All members of the public suffer from and are inconvenienced by traffic congestion, pollution, noises, and obstructed views, and Plaintiffs have not alleged they suffer these harms in any personal, individual way. In short, these allegations are simply complaints about inconveniences suffered broadly by all persons residing in or passing through the City of Charleston and therefore, Plaintiffs fail to establish the first element of standing.

 While a public nuisance cause of action can be used to remedy harms suffered by the public generally, typically only the State may assert this cause of action. *See Brown v. Hendricks*, 211 S.C. 395, 400, 45 S.E.2d 603, 605 (1947) (stating that generally "a private action does not lie to abate a public nuisance"). A private person may bring a private civil suit for a public nuisance only if he suffered a special injury to his real or personal property. *See Overcash v. S.C. Elec. & Gas. Co.*, 364 S.C. 569, 575, 614 S.E.2d 619, 622 (2005); *Brown*, 211 S.C. at 400, 45 S.E.2d at 605. A special injury is "individual or specific damage in addition to that suffered by the public," *Brown*, 211 S.C. at 400, 45 S.E.2d at 605, and must be "of a special character, distinct and different from the injuries suffered by the public generally," *Bowlin v. George*, 239 S.C. 429, 433–34, 123 S.E.2d 528, 530 (1962). In other words, the public nuisance cause of action does not obviate the requirement of a particularized injury. Rather, for a private party to bring a public nuisance cause of action, the private party must have suffered a particularized injury. As previously discussed, Plaintiffs fail to set forth any injury they or their members have suffered that is different from the injury suffered by the public generally. Therefore, the public nuisance cause of action does not provide Plaintiffs with the standing they otherwise lack.

Plaintiffs also assert that as to their zoning claims, Section 6–29–950 of the South Carolina Code (2004) provides standing. While that statute does provide a legally protected interest and thereby standing for neighbors of properties violating a local zoning ordinance, we conclude Plaintiffs' complaint fails to make factual allegations sufficient to establish the applicability of section 6–29–950 here.

Section 6–29–950 provides in part:

In case a building, structure, or land is or is proposed to be used in violation of any ordinance adopted pursuant to this chapter, the zoning administrator or other appropriate administrative officer, municipal or county attorney, or other appropriate authority of the municipality or county *or an adjacent or neighboring property owner who would be specially damaged by the violation* may in addition to other remedies, institute injunction, mandamus, or other appropriate action or proceeding to prevent the unlawful erection,

construction, reconstruction, alteration, conversion, maintenance, or use, or to correct or abate the violation, or to prevent the occupancy of the building, structure, or land. (emphasis added). In short, under section 6–29–950 a specially damaged, adjacent or neighboring property owner can bring an action for an injunction based on an alleged violation of a zoning ordinance.

Section 6–29–950's requirement that a private party seeking to enjoin a zoning violation must be specially damaged incorporates the particularized injury requirement of general standing doctrine as a requirement for the statute to apply. Again, even assuming the *Fantasy* violates the City's zoning ordinances as alleged by Plaintiffs' complaint, Plaintiffs have not alleged that as a result of the violations they suffer any injury distinct from that suffered by the public generally. Additionally, section 6–29–950 only permits "an adjacent or neighboring *property owner*" to bring suit. (emphasis added). Here, Plaintiffs have made no allegations that they own adjacent or neighboring property. They do allege that the League is a tenant in a nearby property and that the Preservation Society holds a conservation easement on a nearby property. However, those interests do not make the League or the Preservation Society a "property owner" as required by the statute to bring suit. *See Connor Holdings, LLC v. Cousins,* 373 S.C. 81, 85, 644 S.E.2d 58, 60 (2007) (holding a tenant lacked standing under a town land management ordinance using identical "adjacent or neighboring property owner" language). Therefore, because Plaintiffs fail to allege that they are or will be specially damaged or that they are a neighboring or adjacent property owner, section 6–29–950 is inapplicable and does not provide Plaintiffs with standing to assert their zoning claims.

Finally, Plaintiffs assert the public importance exception should apply to remedy any lack of standing. South Carolina courts recognize an exception to the requirement that a plaintiff possess standing where "an issue is of such public importance as to require its resolution for future guidance." *Davis v. Richland Cnty. Council,* 372 S.C. 497, 500, 642 S.E.2d 740, 741 (2007). Whether the exception applies in a particular case turns on whether resolution of the dispute is needed for future guidance. *ATC South, Inc. v. Charleston Cnty.,* 380

S.C. 191, 199, 669 S.E.2d 337, 341 (2008). While the need for future guidance generally dictates when the exception applies, the application of the exception in a particular case does not turn on a rigid formula but rather is determined by the competing policy concerns underlying the exception. *Id.* Those competing concerns are that:

> Citizens must be afforded access to the judicial process to address alleged injustices. On the other hand, standing cannot be granted to every individual who has a grievance against a public official. Otherwise, public officials would be subject to numerous lawsuits at the expense of both judicial economy and the freedom from frivolous lawsuits.

*Sloan v. Sanford*, 357 S.C. 431, 434, 593 S.E.2d 470, 472 (2004).

██ In support of their argument that the public importance exception applies, Plaintiffs first rely on Defendants' petition for original jurisdiction and its numerous statements that this case deals with matters of "public interest." Plaintiffs contend that if the Court found the case was of sufficient public interest so as to grant the petition for original jurisdiction, *a fortiori* the case is also of sufficient public importance such that the public importance exception applies. While the Court may exercise original jurisdiction under Rule 245, SCACR, "[i]f the public interest is involved," the "public interest" standard of Rule 245 is not synonymous with the public importance necessary for the public importance exception to standing to apply. Rule 245 is concerned with whether a case should be resolved by this Court in the first instance because of the public interest involved and the need for prompt resolution, whereas the public importance exception is concerned with whether a case is of such public importance that the requirement of standing should be waived. Thus, because the two rules aim to answer different questions— whether the public interest requires expeditious resolution of a case versus whether the public interest requires resolution of a dispute for future guidance despite the lack of standing— the grant of the petition for original jurisdiction has no effect upon whether the public importance exception applies.

Fundamentally, the issues in this case are whether zoning ordinances are preempted by federal and state law, the applicability of zoning ordinances to a cruise ship, and tort liability for a public and a private nuisance cause of action. The case

presents no issue of the constitutionality or legality of government action. Additionally, the claims asserted by Plaintiffs could be brought by other parties who can show the required injury. Therefore, we find the public importance exception inapplicable here.

In our constitutional system of government with its separation of powers, courts exercise the limited constitutional function of the "judicial power." S.C. Const. art. V, § 1. Accordingly, courts are limited to resolving cases and the powers inherent in that function. Courts are not bodies for the resolution of public policy and generalized grievances. Harms suffered by the public at large, like those Plaintiffs allege here, are to be remedied by the legislative and executive branches. If existing laws and regulations or their enforcement fail to protect the public from harm, it is incumbent upon the public to seek reform through their elected officials or failing that, at the ballot box.

## CONCLUSION

We hold Plaintiffs lack standing. Because standing is a fundamental prerequisite for instituting a legal action, we do not consider the remaining issues. Accordingly, we grant Defendants' motions to dismiss.

TOAL, C.J., PLEICONES, BEATTY, and KITTREDGE, JJ., concur.