**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Preservation Society of Charleston, Historic Charleston Foundation, Historic Ansonborough Neighborhood Association, South Carolina Coastal Conservation League, Charleston Chapter of the Surfrider Foundation, and Charleston Communities for Cruise Control, Appellants,

v.

South Carolina Department of Health and Environmental Control and South Carolina State Ports Authority, Respondents.

Appellate Case No. 2014-000847

———————————

Appeal From The Administrative Law Court
Ralph King Anderson, III, Administrative Law Judge

———————————

Unpublished Opinion No. 2017-UP-403
Heard February 15, 2017 – Filed October 18, 2017

———————————

**AFFIRMED**

———————————

W. Jefferson Leath, Jr., of Leath Bouch & Seekings, LLP; and James Blanding Holman, IV, of Southern Environmental Law Center; both of Charleston; Amy Elizabeth Armstrong and Jessie Allison White, both of S.C. Environmental Law Project, of Pawleys Island; and

Michael Gary Corley, of S.C. Environmental Law Project, of Greenville; all for Appellants.

Tracey Colton Green, Randolph Russell Lowell, and Chad Nicholas Johnston, all of Willoughby & Hoefer, PA, of Columbia; and Bradley David Churdar, of Charleston; all for Respondents.

**PER CURIAM:** This is an appeal of several orders issued in a contested case proceeding arising from a citizens' challenge to various permits issued by the South Carolina Department of Health and Environmental Control (DHEC) for a proposed cruise ship terminal in downtown Charleston. The Preservation Society of Charleston, Historic Charleston Foundation, Historic Ansonborough Neighborhood Association, South Carolina Coastal Conservation League, and Charleston Communities for Cruise Control (collectively Appellants) argue the Administrative Law Court (ALC) erred in (1) finding as a matter of law Appellants lacked standing to contest the permits at issue, (2) refusing to vacate certain DHEC authorizations, (3) refusing to expand discovery, and (4) sanctioning Appellants for requesting a remand to the DHEC Board for a final review conference in the matter. We affirm.

## FACTS AND PROCEDURAL HISTORY

Union Pier Terminal (UPT) is a fully operational marine terminal located along the Cooper River near the downtown portion of the Charleston peninsula. It is now owned and operated by the South Carolina State Ports Authority (SPA). UPT has hosted passenger vessels every year since its dedication in 1973. Currently, UPT accommodates cargo ships at its northern end and passenger vessels at its southern end.

In 2010, after Carnival Cruise Lines began home-basing a 2,500-passenger ship in Charleston for year-round cruises and Celebrity Cruise Lines made plans for a new service from Charleston, SPA announced a capital improvement plan that includes a cruise ship terminal in Charleston's downtown historic district. Under the plan, SPA will transfer its cargo operations to other terminals and move cruise passenger operations from the southern end of UPT to the northern end. SPA also intends to adopt a traffic management plan that will reduce the periodic route congestion at the southern end without increasing traffic at the northern end.

Although renovating Building 325, the existing passenger terminal, is possible, SPA decided against this option because of the age of Building 325 and the upgrades necessary to provide adequate service and comply with federal homeland security requirements.  Instead, SPA targeted Building 322, an abandoned warehouse at the northern end of UPT that is more than three times larger than Building 325, as the site for a new cruise passenger terminal.

A structural support system with 1,008 concrete pilings is already in place under Building 322, but the project requires five additional pilings to support three elevators and two escalators.  In 2012, because of anticipated environmental impacts from the additional pilings, SPA submitted a joint application to the United States Army Corps of Engineers (the Corps) and DHEC for permission to engage in activities affecting the waters of the United States and critical areas of South Carolina.  In the application, SPA sought (1) a federal permit from the Corps under Section 10 of the Rivers and Harbors Act (Section 10 authorization),[1] (2) a South Carolina Section 401 Water Quality Certification (401 certification),[2] and (3) a South Carolina Critical Area Permit (CAP)[3] and a Coastal Zone Consistency Certification (CZCC).[4]

The Corps granted provisional Section 10 authorization pursuant to a nationwide permit (NWP 3) pending SPA's receipt of either a 401 certification or a CZCC.  In April 2012, DHEC staff issued a 401 certification without conditions for all NWP 3 activities, thus eliminating the need for a separate 401 certification for the

[1] 33 U.S.C.A. §§ 401 and 403 (2016).

[2] The 401 certification from DHEC is a prerequisite to the Section 10 authorization from the Corps.  *See* 33 U.S.C.A. § 1341(a)(1) (2016) (requiring an applicant for a federal permit for activity that may result in a discharge into navigable waters to provide the permitting agency with a certification from the State in which the discharge will originate that the discharge will comply with that State's water quality standards).

[3] *See* S.C. Code Ann. § 48-39-10(J) (2008) (defining the term "critical area"); S.C. Code Ann. 48-39-130 (2008 & Supp. 2017) (setting forth permit requirements for utilization of critical areas).

[4] *See* S.C. Code Ann. § 48-39-80 (2008) (requiring DHEC to "develop a comprehensive coastal management program" with consideration of "all lands and waters in the coastal zone for planning purposes" and specifically authorizing DHEC to "[d]evelop a system whereby [DHEC] shall have the authority to review all state and federal permit applications in the coastal zone[] and to certify that these do not contravene the management plan").

proposed project.  In December 2012, DHEC approved SPA's application for a CAP and CZCC.

On January 2, 2013, Appellants requested a final review conference of DHEC's decision.[5]  The DHEC Board declined the request on January 11, 2013.  On February 11, 2013, Appellants appealed this decision by requesting a contested case hearing with the ALC.[6]

The ninety-day period to complete all discovery in the matter commenced on February 19, 2013, when the clerk of the ALC issued a notice of assignment in the matter.  Therefore, discovery in the matter was to be completed by May 20, 2013, absent either a motion for good cause shown or a motion initiated by the ALC to change the deadline.[7]

On February 27, 2013, while the contested case was pending, Appellants moved to remand the matter to the DHEC Board for a final review conference.  Appellants contended a final review conference was mandated by section 44-1-60(F) of the South Carolina Code (2018).  The ALC denied the motion on May 3, 2013.

On July 1, 2013, SPA filed two motions.  First, SPA moved for dismissal of the proceeding on the ground that Appellants failed to establish standing to challenge the CAP and the CZCC.  Second, SPA requested sanctions on Appellants for their motion to remand the matter to the DHEC Board for a final review conference.  On September 6, 2013, the ALC held a hearing on SPA's motion to dismiss and took the matter under advisement.

On September 18, 2013, while SPA's motion to dismiss was pending, the United States District Court for the District of South Carolina voided the federal authorization granted by the Corps and remanded the project to the Corps for reconsideration under a broader scope of analysis.  The order was issued in

---

[5] *See* S.C. Code Ann. 44-1-60(F) (2018) (setting forth the procedure that follows a request for a final review conference).

[6] *See* S.C. Code Ann. § 44-1-60(G)(1) (2018) (allowing certain parties to file a request with the ALC for a contested case hearing within thirty days after the mailing of the notice that the DHEC Board declined to hold a final review conference).

[7] *See* SCALC Rule 21A ("All discovery shall be completed within 90 days of the date of the Notice of Assignment.  Upon motion for good cause shown or upon [its] own motion, discovery may be expanded or curtailed by the [ALC].").

response to a motion by Preservation Society of Charleston and South Carolina Coastal Conservation League for a preliminary injunction against the installation of the pilings pending a full individual permit review that would include an environmental assessment or an environmental impact statement and consultation with the public.  According to the District Court, "[t]he Army Corps' determination to limit the 'scope of analysis' to the impact of the five concrete pile clusters, rather than the new passenger terminal, dramatically and improperly constricted the assessment of the potential environmental and historic landmark impacts of the proposed activity." *Preservation Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, Civil Action No. 2:12-2942-RMG, slip op. at 20 (D.S.C. Sept. 18, 2013). Based on this finding, the District Court found the Corps' authorization for the project was "unlawful and void" and remanded the matter to the Corps "to place within its 'scope of analysis' all activities within its jurisdiction . . . which the Court finds . . . must include, at a minimum, all activities concerning the Building 322 conversion project." *Id.* at 29.

Notably, in voiding the Corps' Section 10 authorization, the District Court also rejected an argument made by SPA, an intervenor-defendant in the proceeding, that the plaintiffs lacked standing to bring the action.  The District Court found SPA advocated "an artificially narrow view of [the] controversy" by insisting that "the [District] Court limit its standing analysis to the installation of the five concrete pile clusters and ignore the renovation of Building 322 into a state-of-the-art cruise ship terminal." *Id.* at 27.  Observing the plaintiffs included residents of the Ansonborough Neighborhood, which abutted the north side of UPT, where Building 322 is located, the District Court concluded its invalidation of the Corps' authorization "could potentially redress" "the alleged detrimental effects of the proposed new cruise ship terminal—including increased traffic congestion and airborne pollution from cruise ships." *Id.* at 27-28.[8]

Immediately after the District Court issued its opinion, Appellants filed a supplemental memorandum in response to SPA's motion to dismiss.  Relying on the District Court's decision, Appellants argued the question of their standing had been fully litigated and decided in the federal court proceeding.

On November 1, 2013, Appellants moved to vacate the CAP and CZCC that DHEC issued to SPA.  Appellants argued the District Court's voiding of the federal

---

[8] The Fourth Circuit Court of Appeals dismissed an appeal of the District Court's decision. *Preservation Soc'y of Charleston v. v. U.S. Army Corps of Eng'rs*, No. 13-2280, slip. op. (4th Cir. Jan. 6, 2014).

authorization for the project "removed the predicate for exempting SPA from a separate individual 401 Water Quality Certification for the project."

On December 2, 2013, the ALC issued an order denying SPA's motion to dismiss. As to individual standing, the ALC found (1) Appellants alleged injuries in fact to their aesthetic, recreational, and property interests that would result from the proposed expansion of passenger operations at UPT; (2) Appellants' claim that SPA would not be able to relocate and expand the cruise terminal without the five additional pilings was an allegation of sufficient facts to show a causal connection; and (3) although withdrawal of the authorization for the pilings would not abate any injuries Appellants were currently suffering from the existing cruise ship operations, Appellants alleged it would prevent exacerbation of those injuries. As to organizational standing, the ALC ruled Appellants sufficiently alleged standing through their assertions that (1) their members would suffer individualized injuries and (2) protection of their members' interests was germane to their organizational objectives. The ALC further found the central issue in the case was whether "the discrete matter of whether the permit issued to [SPA] complie[d] with state law," and ruled this controversy was not a non-justiciable political question. In declining to dismiss the action, however, the ALC emphasized it was not converting SPA's motion into one for summary judgment.

On December 20, 2013, the ALC denied Appellants' motion to vacate the CAP and CZCC. Ultimately, the ALC ruled the motion "must be denied at this stage of the litigation" because "there [was] not sufficient evidence for [the ALC] to determine the extent of DHEC's review or the procedures that were followed in issuing the permit." The ALC further suggested Appellants could bring their motion again, at which time the ALC would "then determine based upon the facts of this case in keeping with its *de novo* review what is the appropriate scope of review for this project and whether the project complies with the standards of that review."

On December 23, 2013, Appellants moved to expand discovery in order to take additional depositions after the deadline for completion of all discovery in the matter. On December 27, 2013, SPA filed motions for (1) summary judgment based on Appellants' lack of standing and (2) partial summary judgment prohibiting Appellants from challenging the 401 certification issued by the DHEC staff.

On March 3, 2014, the ALC (1) ordered Appellants to pay SPA $9,300.00 in attorney's fees as a sanction for their motion to remand the matter to the DHEC

Board for a final review conference[9] and (2) denied Appellants' motion to expand discovery.

On April 11, 2014, the ALC issued an order granting summary judgment to SPA based on a finding that Appellants lacked standing to proceed with the contested case. The ALC found (1) in order to establish individual standing, Appellants had to satisfy the requirements set forth in *Lujan v. Defenders of Wildlife*,[10] (2) Appellants did not satisfy any of the required elements of the *Lujan* test, (3) Appellants did not satisfy the requirements necessary for associational standing, and (4) Appellants failed to establish standing under the public importance exception.

Appellants filed a notice of appeal on April 23, 2014, challenging the ALC's (1) grant of summary judgment to SPA based on the finding Appellants lacked standing, (2) denial of their motion to vacate the CAP and CZCC, (3) refusal to expand discovery, and (4) imposition of sanctions.

## LAW/ANALYSIS

### Associational Standing

When, as in the present case, the complaining parties are associations, they "may possess standing by virtue of associational standing on behalf of [their] members." *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 75-76, 753 S.E.2d 846, 850 (2014). "The three part test for associational standing *requires* that an association's members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, *and* neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 76, 783 S.E.2d at 851 (emphasis added).

The ALC's ruling that Appellants lacked standing to proceed with the contested case was in response to SPA's summary judgment motion. Therefore, the burden was on SPA to demonstrate "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[9] On April 11, 2014, the ALC amended its order granting sanctions. The two orders differ only in their respective discussions of a position taken by one of the appellants in an appeal of another case. The sanction imposed against Appellants was the same in both orders.

[10] 504 U.S. 555 (1992).

genuine issue as to any material fact and that [SPA was] entitled to a judgment as a matter of law." Rule 56(c), SCRCP. Nonetheless, elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

We agree with Appellants that section 44-1-60 of the South Carolina Code (2018), does not specifically define the term "affected persons"; therefore, we should interpret the term according to its usual and customary meaning. *See Travelscape, LLC v. S.C. Dep't of Rev.*, 391 S.C. 89, 99, 705 S.E.2d 28, 33 (2011) ("When faced with an undefined statutory term, the [c]ourt must interpret the term in accordance with its usual and customary meaning."). However, "[c]ourts should consider not merely the language of the particular clause being construed, but the undefined word and its meaning in conjunction with the whole purpose of the statute and the policy of the law." *Id.* Based on our review of relevant statutory, regulatory, and case law, we conclude the legislature, in allowing an "affected person" to request a contested case before the ALC pursuant to section 44-1-60, intended to limit the class of such persons to those who are not only adversely affected by the controversy but also able to establish standing under the test set forth in *Lujan*. *See* S.C. Code Ann. § 48-39-150(D) (2008) (granting "a person adversely affected by the granting of [a] permit . . . the right of direct appeal from the decision of the [ALC]"); S.C. Code Ann. § 48-39-180 (2008) (granting the right of judicial review of a permit determination to "any person adversely affected by the permit"); S.C. Code Ann. Regs. 30-6A (2011) (allowing "an affected person with standing pursuant to applicable law" to appeal a departmental decision involving the issuance of a permit); *Smiley v. S.C. Dep't of Health & Envtl. Control*, 374 S.C. 326, 329-30, 649 S.E.2d 31, 32-33 (2007) (interpreting the phrase "person adversely affected," as used in section 48-39-150, as language conferring standing but also referencing the factors set forth in *Lujan* as the three components of the "irreducible constitutional minimum of standing").

As set forth in *Lujan*, the three requirements for the "irreducible constitutional minimum of standing" are (1) an injury in fact that is concrete and particularized and not conjectural or hypothetical, (2) a causal connection between the injury and the conduct at issue, and (3) a showing that it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The Supreme Court of South Carolina has viewed these criteria as components of a "'stringent' test for standing." *Jowers v. S.C. Dep't of Health &*

*Envtl. Control*, Op. No. 27725 (S.C. Sup. Ct. filed July 19, 2017) (Shearouse Adv. Sh. No. 27 at 28, 33) (quoting *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001)). Furthermore, "[t]he party seeking to establish standing carries the burden of demonstrating each of the three elements." *Sea Pines*, 345 S.C. at 601, 550 S.E.2d at 291.

As the ALC observed, Appellants made numerous allegations to the effect that the authorizations granted by DHEC would adversely affect their quality of life because of pollution, traffic congestion, and the visual disruption of Charleston's historic integrity and aesthetic beauty. We hold these injuries, even if actually suffered by individual complainants, are "only generalized grievances suffered by the public as a whole which are insufficient to establish standing." *Carnival*, 407 S.C. at 76, 753 S.E.2d at 851; *see also Lujan*, 504 U.S. at 560 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way.").

Appellants also presented affidavits from several individuals who expressed concern about the effect of the permitted activities on their property values and businesses. However, as the ALC observed, Appellants expressed only "[c]oncern[] without evidence of declining property values and business reasonably attributed to granting the permit," which, the ALC correctly concluded "does not constitute actual or imminent harm." *See Sea Pines* 345 S.C. at 601, 550 S.E.2d at 291 (stating "[t]he party seeking to establish standing carries the burden of demonstrating each of the three elements" of "the irreducible constitutional minimum of standing," which include "a causal connection between the injury and the conduct complained of," i.e., "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'" (quoting *Lujan*, 504 U.S. at 560)). We agree with the ALC that Appellants presented only speculative claims that the proposed passenger terminal would adversely affect their property values and businesses.

Finally, Appellants cite an affidavit from a member of the Coastal Conservation League who asserted (1) smoke emitted from the existing passenger terminal already physically impacts her to the extent that she must retreat indoors when cruise ships are in town and (2) the proposed new terminal, which would be closer to her home than the existing terminal, would only increase these adverse impacts. Even if this evidence is sufficient to confer individual standing, we agree with the ALC's conclusion that the injuries allegedly suffered by this affiant do not satisfy the third required element of associational standing, namely that "neither the claim

asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[S]o long as the nature of the claim and of the relief sought does not make the individual participation of each injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction."). Appellants have not explained how the claims they have asserted or the relief they have requested can be adjudicated without the affiant's participation in the lawsuit. *See id.* at 515-16 (concluding that because "whatever injury may have been suffered is peculiar to the individual member concerned, . . . both the fact and extent of injury would require individualized proof" and therefore, "to obtain relief . . . , each member of [the association] who claims injury as a result of respondents' practices m[u]st be a party to the suit and [the association] has no standing to claim damages on [the individual member's] behalf").

**Standing Under the Public Importance Exception**

We affirm the ALC's rejection of Appellants' claim of standing under the public importance exception. As evidence of public importance, Appellants cited a budget proviso passed by the General Assembly requiring shore power in Charleston for cruise ships; however, their discussion lacks an essential element of the public importance exception, namely, an explanation as to why resolution of the current controversy is necessary for future guidance so as to justify the invocation of a sparingly applied exception. *See S.C. Pub. Int. Found. v. S.C. Dep't of Transp.*, Op. No. 27738 (S.C. Sup. Ct. filed Sept. 14, 2017) (Shearouse Adv. Sh. No. 35 at 21, 25) (recognizing that because many issues may be of public interest or public importance, "[t]he key . . . is whether a resolution is needed for future guidance" (quoting *ATC S., Inc. v. Charleston Cty.*, 380 S.C. 191, 198-99, 669 S.E.2d 337, 341 (2008))); *Jowers v. S.C. Dep't of Health & Envtl. Control*, Op. No. 27725 (S.C. Sup. Ct. filed July 19, 2017) (Shearouse Adv. Sh. No. 27 at 28, 39) (acknowledging that a party may have standing when an issue is of such public importance that its resolution is necessary for future guidance but also stating courts must be cautious in applying this exception).

**Issue Preclusion**

We disagree with the ALC's rationale for declining to find the order issued by the South Carolina District Court barred SPA from challenging Appellants' standing to

proceed in the contested case proceeding.[11]  Nevertheless, the doctrine of collateral estoppel should not be rigidly applied even if all the elements are present.  *See Carolina Renewal, Inc. v. S.C. Dep't of Transp.*, 385 S.C. 550, 555, 684 S.E.2d 779, 782 (Ct. App. 2009) ("[E]ven if all the elements for collateral estoppel are met, when unfairness or injustice results or public policy requires it, courts may refuse to apply it.").  Furthermore, we found no evidence in the record to support a finding that SPA "actually litigated" the issue of Appellants' standing within the expanded scope of analysis applied by the District Court in the federal court proceeding.[12]  *See id.* at 554, 684 S.E.2d at 782 ("The party asserting collateral estoppel must demonstrate that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment.").  Under these circumstances, we affirm as modified the ALC's rejection of Appellants' argument that SPA was collaterally estopped from raising the issue of standing in the contested case proceeding.

**Motion to Vacate CAP and CZCC**

Based on our determination that Appellants lacked standing to pursue the contested case proceeding, we decline to address their argument that the ALC erred in denying their motion to vacate the CAP and CZCC issued by DHEC.  *See Magnolia N. Prop. Owners' Ass'n, Inc. v. Heritage Comms., Inc.*, 397 S.C. 348, 377, 725 S.E.2d 112, 128 (Ct. App. 2012) (declining to address an issue because the resolution of another issue in the appeal was dispositive).

---

[11] In rejecting Appellants' argument that SPA was collaterally estopped from relitigating the issue of standing, the ALC reasoned the District Court order addressed only the federal process and "did not negate the critical area permit and coastal zone certification at issue" in the contested case proceeding.  This reasoning, however, does not address Appellants' argument that the District Court actually decided the issue of their standing to challenge any government permits issued in connection with SPA's plan to relocate passenger services to the northern end of UPT.

[12] In their brief, Appellants asserted "[t]he elements of Article III Standing were briefed by both sides, with SPA contending that [Appellants] lacked any injury traceable *to approval of the cruise terminal's federal permit . . . .*"  (emphasis added).  This language indicates SPA limited its standing analysis to effects of the installation of the five additional pilings, which the District Court rejected as artificially narrow.

**Motion to Expand Discovery**

We further disagree with Appellants' argument that the ALC erred in declining to expand discovery beyond the ninety-day deadline set forth in SCALC Rule 21A. We do not dispute Appellants' references to correspondence among counsel of record and communications with the ALC that suggest the ALC as well as all parties may have proceeded as if discovery would continue after the ninety-day period following the notice of assignment; however, we find no abuse of discretion in the ALC's refusal to extend the time for discovery when the motion for the extension was not made until seven months after the deadline. *See Hollman v. Woolfson*, 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009) ("A trial judge's rulings on discovery matters will be not disturbed by an appellate court absent a clear abuse of discretion."). In so holding, we further note (1) although Rule 21 allows for discovery to be expanded by the ALC "[u]pon motion for good cause shown," Appellants failed to avail themselves of this means of having the deadline extended and (2) we found no evidence of an express assurance from SPA or DHEC that either would consent to discovery past the ninety-day deadline absent a timely motion for this relief.

**Sanction**

Finally, we affirm the order directing Appellants to pay SPA's attorney's fees incurred as a result of their motion to remand the matter to the DHEC Board for a final review conference. We hold the ALC did not abuse its discretion in imposing the sanction. *See Ex parte Gregory*, 378 S.C. 430, 437, 663 S.E.2d 46, 50 (2008) ("[T]he abuse of discretion standard plays a role in the appellate review of a sanctions award.").

The DHEC Board had already declined to hold such a conference, and this decision prompted Appellants to seek relief in the ALC. Even if their motion for a remand to the DHEC Board was made in good faith, Appellants advocated a frivolous statutory interpretation "that a reasonable attorney would believe [was] not warranted under the existing law." S.C. Code Ann. § 15-36-10(A)(4)(c) (Supp. 2017); *see also* SCALC Rule 72 ("If the [ALC] determines that a . . . motion . . . is frivolous . . . , the [ALC] may impose such sanctions as the circumstances of the case and discouragement of like conduct in the future may require."); 2014 Revised Notes to SCALC Rule 72 ("In determining whether a case or defense is frivolous, the [ALC] may refer to S.C. Code Ann. § 15-36-10, the Frivolous Civil Proceedings Sanctions Act.").

Although Appellants correctly argue the statutory provision at issue here, section 44-1-60(F) of the South Carolina Code (2018), provides the DHEC Board "must" conduct a final review conference "[n]o later than sixty calendar days after the date of receipt of a request for final review," they disregard additional language in this section indicating the Board may "decline[] in writing to schedule a final review conference," in which case "the staff decision becomes the final agency decision." *See Beaufort Cty. v. S.C. State Election Comm'n*, 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011) ("[A] statute shall not be construed by concentrating on an isolated phrase."). Considering the clear language of section 44-1-60(F) and Appellants' apparent disregard of a settled rule of statutory construction, we find no abuse of discretion that would warrant reversal of the sanction imposed against them.

**AFFIRMED.**

**HUFF, SHORT, and THOMAS, JJ., concur.**